SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Derrick Brown** (A-113-11) (070200)

**Argued April 16, 2013 -- Decided January 29, 2014**

**ALBIN, J., writing for a majority of the Court.**

The issue in this appeal is whether the State established by a preponderance of the evidence that 820 Line Street in the City of Camden, a shabby and neglected row house, was abandoned or that defendants were trespassers, justifying a warrantless search of the house.

On May 12, 2010, based on information from two confidential informants and a concerned citizen that 820 Line Street, a dilapidated row house in the City of Camden, was being used as a "stash location" for illegal drug transactions, State Trooper Kurt Kennedy set up a surveillance of the property. Trooper Kennedy observed what he believed to be four drug transactions, each following the same pattern: the transfer of money, unlocking and entering of 820 Line Street, exiting and locking the door, and the handing of a small item to the buyer. Some of the transactions also involved a property located across the street, 815 Line Street. Trooper Kennedy concluded that the individuals were selling drugs out of 820 and 815 Line Street. He did not attempt to determine who owned or lived in either residence or to secure a search warrant.

On May 17, Trooper Kennedy and a fellow trooper conducted a second surveillance of 820 Line Street. They observed two black men standing near the residence, one whom he knew to be defendant Kareem Strong and the other whom he later learned was Tyree Thomas. Two more black men came onto the scene: defendants Derrick Brown and Leroy Carstarphen. Trooper Kennedy witnessed fifteen drug transactions that involved unlocking a padlock at 820 Line Street, entering, and exiting shortly afterwards with a small item that was handed to the buyer. Sometimes the transactions involved 815 Line Street. After observing these drug transactions for "a little more than [two] hours," Trooper Kennedy called in arrest teams to place the suspects into custody. None had drugs in their possession. One of the arresting officers, Trooper Gregory Austin, took from defendant Strong keys that opened the padlock securing the front door to 820 Line Street. The front door was the only means of gaining access to the residence.

Trooper Austin testified to the events that occurred after the arrests. Three or four troopers were posted in front of 820 Line Street and two in the rear, securing the entire residence. One of the two front windows of 820 Line was broken. The front door was padlocked, and the rear door was "off the hinges" and "propped closed" so that no one could exit from inside. Through the front broken window, Trooper Austin could see "trash bags" filled with "old clothes" and "soda cans" littering the living room. He did not observe any light fixtures, and the electric meter was missing. Unlike 820 Line, the neighboring houses immediately to the left and right were boarded up. Trooper Austin determined that 820 Line was an "abandoned" house and could be searched without a warrant. The troopers opened the padlock, entered the residence, and searched the house. Trooper Austin reported that there was "trash everywhere." He did not test the utilities. The troopers discovered evidence of criminality inside 820 Line: a sawed-off rifle inside a floor air vent and drugs and drug paraphernalia on a shelf above the stairs to the basement. The troopers concluded that 815 Line Street was "occupied" and therefore Trooper Kennedy secured a search warrant to gain entry. The search of 815 Line uncovered crack cocaine and drug paraphernalia.

The trial court granted defendants' motion to suppress the evidence seized at 820 Line Street, finding the warrantless search invalid. The court found that the State had not satisfied its burden of proving that 820 Line was an abandoned building that justified bypassing the warrant requirement; that defendants had automatic standing to challenge the search because they exercised "possessory control over the premises" by the manner in which the front door was padlocked and the rear door secured; and that exigent circumstances did not justify a warrantless search of 820 Line.

1

The Appellate Division, in an unpublished opinion, affirmed the trial court's suppression order. The panel concluded that the State had not proved that the building was abandoned. From the panel's perspective, a check of the recorded deeds would have revealed "the identity of the owner of the property." From there, "the troopers could have conclusively determined whether the owner had abandoned the property" and whether defendants were trespassers or squatters. The Supreme Court granted the State's motion for leave to appeal. 210 N.J. 216 (2012).

**HELD**: The State did not establish by a preponderance of the evidence that 820 Line Street in the City of Camden, although in decrepit condition, was abandoned or that defendants were trespassers, thus failing to justify the warrantless search of the property.

1. The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution both guarantee "[t]he right of the people to be secure in their… houses… against unreasonable searches and seizures." There is a clear preference for police officers to secure a warrant before entering and searching a home; warrantless searches are presumptively invalid. However, under both Article I, Paragraph 7 and the Fourth Amendment, a defendant has no standing to challenge the warrantless search of abandoned property, and to that extent, abandoned property falls within an exception to the warrant requirement. (pp. 16-20)

2. Defendants do not have standing to object to the warrantless search of the property if the building was abandoned or, alternatively, if they were trespassers; they would not have the requisite possessory or proprietary interest in the property to object to the search. However, the State bears the burden of proving by a preponderance of the evidence that the building is abandoned or defendants are trespassers. The proper test for abandonment remains, for Fourth Amendment purposes, whether a defendant "retains a reasonable expectation of privacy in the property alleged to be abandoned," United States v. Stevenson, 396 F.3d 538, 546 (4th Cir.), and, for Article I, Paragraph 7 purposes, whether a defendant "retain[s] a proprietary, possessory, or participatory interest" in the property, State v. Johnson, 193 N.J. 528 (2008). The test must be one of objective reasonableness; the subjective belief of the officer is not a relevant consideration. In short, "[t]here simply is no 'trashy house exception' to the warrant requirement," and therefore "[i]t is unreasonable to assume that a poorly maintained home is an abandoned home." United States v. Harrison, 689 F.3d 301, 311 (3d Cir. 2012). This case was decided under the New Jersey Constitution. (pp. 20-25)

3. Under Article I, Paragraph 7 of the New Jersey Constitution, there are a number of factors to be considered in determining whether, in light of the totality of the circumstances, a police officer has an objectively reasonable basis to believe a building is abandoned, thus justifying a warrantless entry and search. No one factor is necessarily dispositive, and the weight to be given to any factor will depend on the particular circumstances confronting the officer. If obtaining a warrant is impracticable, and exigent circumstances demand swift action because of the threatened destruction of drugs inside a residence, then a warrantless entry may be justifiable. (pp. 25-29)

4. Just as a defendant will have no standing to challenge a search of abandoned property, he will have no standing to challenge a search if an officer had an objectively reasonable basis to believe he was a trespasser. A trespasser does not have a possessory or proprietary interest in property where he does not belong. The State bears the burden of showing that the police officer had an objectively reasonable basis to believe a person was a trespasser, justifying a warrantless search of a home. Ultimately, the focus must be whether, in light of the totality of the circumstances, a police officer had an objectively reasonable basis to conclude that a building was abandoned or a defendant was a trespasser before the officer entered or searched the home. (pp. 29-33)

5. It can hardly be disputed that Trooper Kennedy had probable cause to believe that drug dealing was occurring at 820 Line Street. The issue, however, is whether the troopers had a reason to bypass the warrant requirement. The troopers did not know whether the defendants resided there in the evenings, whether they had an ownership interest in the property, or whether they had permission of the owner to use the property. There is no suggestion in the record that evidence inside the building was in danger of destruction or that obtaining a warrant was impracticable due to some other exigency. The question to be answered is not whether the police have a subjective, good-faith belief that a building is abandoned, but whether they have an objectively reasonable basis to believe so. The Court has no reason to substitute its judgment for the judgment properly and fairly exercised by the trial court. The State did not establish that the property, although in decrepit condition, was abandoned or that defendants were trespassers. (pp. 31-40)

The judgment of the Appellate Division is **AFFIRMED** and the matter is **REMANDED** to the trial court

2

for proceedings consistent with the Court's opinion.

   **JUSTICE PATTERSON** filed a separate, **DISSENTING** opinion, in which **CHIEF JUSTICE RABNER** joins, stating that the trial court's factual findings do not support, but rather undermine, the majority's conclusion that the State failed to meet its evidentiary burden in this case, and that, contrary to the majority's suggestion, the police officers did not ride roughshod over the constitutional rights of the residents of a poor neighborhood.

   **JUSTICE LaVECCHIA and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion. JUSTICE PATTERSON filed a separate, dissenting opinion in which CHIEF JUSTICE RABNER joins.**

SUPREME COURT OF NEW JERSEY
A-113 September Term 2011
070200

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

DERRICK BROWN, LEROY
CARSTARPHEN, and KAREEM
STRONG,

    Defendants-Respondents.


Argued April 16, 2013 – Decided January 29, 2014

On appeal from the Superior Court, Appellate Division.

Linda A. Shashoua, Assistant Prosecutor, argued the cause for appellant (Warren W. Faulk, Camden County Prosecutor, attorney).

Kenneth D. Aita argued the cause for respondent Derrick Brown.

Theodore J. Baker, Designated Counsel, argued the cause for respondent Kareem Strong (Joseph E. Krakora, Public Defender, attorney).

Brad Wertheimer, Designated Counsel, argued the cause for respondent Leroy Carstarphen (Joseph E. Krakora, Public Defender, attorney).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jeffrey S. Chiesa, Attorney General, attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

1

Our Federal and State Constitutions protect the sanctity of the home from unreasonable searches by government officials. The constitutional protections afforded to the home make no distinction between a manor estate in an affluent town and a ramshackle hovel in an impoverished city. The occupants of both structures are clothed with the same constitutional rights. In both cases, the search of a home without a warrant is presumptively unreasonable, and the State therefore bears the burden of showing either that the defendant has no standing to challenge the search or that any such search falls within a well-delineated exception to the warrant requirement.

In this case, during a surveillance over two days, the New Jersey State Police observed drug activity operating from 820 Line Street, a dilapidated row house in the City of Camden with one or more windows broken, the interior in disarray, the front door padlocked, and the back door off its hinges but propped closed. The State Police arrested defendants Derrick Brown, Leroy Carstarphen, and Kareem Strong for dealing drugs. After securing a key from one of the defendants to open the padlock, the police conducted a warrantless search of the row house, seizing a gun and drugs. Defendants moved to suppress that evidence as the product of an unconstitutional search.

At a suppression hearing, the State claimed that the warrantless search of 820 Line Street by the State Police was

2

justified because the property was abandoned.  After taking testimony, the trial court found that the State did not establish by a preponderance of the evidence that the shabby and neglected row house was abandoned property.  The court noted that defendants were exercising possessory or proprietary rights over the property and that the State Police did not make efforts to identify an owner.  The Appellate Division found that the trial court's fact-findings and legal conclusions were supported by the record.

We affirm.  Under our deferential standard of review, we do not second-guess the trial court when sufficient credible evidence in the record supports its findings.  Here, the record supports the trial court's finding that the State did not meet its burden of justifying the warrantless search.  In particular, the State did not establish that the property, although in decrepit condition, was abandoned or that defendants were trespassers.  We have no reason to disturb those findings and therefore uphold the suppression of the evidence.

I.

A.

Defendants Derrick Brown, Leroy Carstarphen, and Kareem Strong were charged in a Camden County Indictment with third-degree possession of a controlled dangerous substance (CDS),

3

namely cocaine, N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1), -5(b)(3); third-degree unlawful possession of weapons, N.J.S.A. 2C:39-5(c); second-degree weapons possession during CDS offenses, N.J.S.A. 2C:39-4.1(a); and third-degree conspiracy to possess CDS with intent to distribute, N.J.S.A. 2C:5-2, :35-5(a)(1), :35-5(b)(3). Brown and Strong were also charged with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

Defendants claim that the State Police unconstitutionally seized evidence during a warrantless search of 820 Line Street in Camden. The trial court conducted a two-day suppression hearing at which Troopers Kurt Kennedy and Gregory Austin testified.

B.

According to Trooper Kennedy, the State Police received information from two confidential informants and a concerned citizen that defendant Strong was selling drugs and in possession of a sawed-off shotgun.[1] The information also indicated that Strong was using 820 Line Street as a "stash location" and kept a lock on the residence.

---

[1] The record does not reveal whether Trooper Kennedy had any contact with the confidential informants or the citizen; it only reveals that he considered the informants credible because other troopers had used them in the past.

4

On May 12, 2010, Trooper Kennedy set up a surveillance of 820 Line Street during daylight hours, but exactly when or for how long is unclear. Trooper Kennedy observed what he believed to be four drug transactions, each following the same pattern. Two unknown black males, apparently drug sellers, stood outside 820 Line Street as buyers approached one of the two and gave him money. After taking the money, the unknown seller unlocked the door to 820 Line Street, entered for approximately thirty seconds, secured the door as he exited, and then handed a small item to the buyer. The trooper also observed, coming from 815 Line Street, a third unknown black male who gave the seller a sandwich bag, presumably with drugs. Trooper Kennedy came to the unremarkable conclusion that the three individuals were selling drugs out of 820 and 815 Line Street. He did not attempt to determine who owned or lived in either residence or to secure a search warrant.

On May 17, Trooper Kennedy and a fellow trooper conducted a second surveillance of 820 Line Street, during daylight, beginning about 6:00 a.m. or 7:00 a.m. Trooper Kennedy observed two black men standing near the residence, one whom he knew to be defendant Strong and the other whom he later learned was Tyree Thomas. Two more black men came onto the scene: defendant Derrick Brown, who rode up to the group on a bicycle, and defendant Leroy Carstarphen, who approached on foot and "shook

5

everyone's hand." At this point, all four men were standing in front of 815 Line Street, across the street from 820 Line Street. Carstarphen then walked to the corner of 8th and Line Street and stood there. None of these four individuals were identified by Trooper Kennedy as any of the black males he had seen five days earlier entering 820 Line Street.

Trooper Kennedy witnessed fifteen drug transactions that fit the following pattern. A buyer approached and gave money to either Brown or Strong. The one receiving the currency then unlocked the padlock and entered 820 Line Street, exiting shortly afterwards with a small item that was handed to the buyer. Sometimes a buyer gave money to Thomas, who then entered 815 Line Street and exited with a small item that he handed to the buyer. After observing these drug transactions for "a little more than [two] hours," Trooper Kennedy called in arrest teams to place the suspects into custody. Strong was arrested in front of 820 Line Street, and Brown, Carstarphen, and Thomas were arrested in front of 815 Line Street. None had drugs in their possession, but the troopers confiscated $173 from Brown.

One of the arresting officers, Trooper Gregory Austin, took from defendant Strong keys that opened the padlock securing the front door to 820 Line Street. The front door was the only means of gaining access to the residence.

6

Trooper Austin testified to the events that occurred after the arrests. Three or four troopers were posted in front of 820 Line and two in the rear, securing the entire residence. One of the two front windows was broken, "cracked" with "a piece missing." Austin was uncertain whether the other window was damaged. The front door was padlocked, and the rear door was "off the hinges" and "propped closed" so that no one could exit from inside. At no point did Trooper Austin suggest that the front door could not be locked from the inside -- that is, that the padlock was not a secondary level of protection. Through the front broken window, Trooper Austin could see "trash bags" filled with "old clothes" and "soda cans" littering the living room. "[T]here could have been upside-down furniture" as well. The living room was "in disarray," and no lights were on at the time. Austin did not observe any light fixtures, and the electric meter was missing.

Unlike 820 Line, the neighboring houses immediately to the left and right were boarded up. Trooper Austin determined that 820 Line was an "abandoned" house and could be searched without a warrant. He came to that conclusion based on the broken window (or windows), the absence of an electric meter, the propped-closed door in the rear, and the trashy condition of the interior.

The troopers opened the padlock and entered the residence, sweeping through the house to make certain no one else was inside. They then searched the house. Trooper Austin reported that there were holes in the wall, human feces on the floor, and "trash everywhere," although he did not elaborate on what he meant by trash. He did see a "small electrical appliance," a "Hamilton Beach Custom Grinder," used to grind coffee. He did not, however, test the utilities. The first floor contained stairs leading to an upper floor and to a basement. Austin did not describe the number of rooms in the residence or whether there were furnishings in the rooms.

Ultimately, the troopers discovered evidence of criminality inside 820 Line: a sawed-off rifle inside a floor air vent, and drugs and drug paraphernalia on a shelf above the stairs to the basement. On the shelf were "yellow caps of crack cocaine"; little Ziploc bags containing wax paper folds typically used to package heroin; and a grinder, strainer, and toothbrush.

The troopers concluded that the residence across the street, 815 Line Street, was "occupied" and therefore Trooper Kennedy secured a search warrant to gain entry. In his affidavit in support of that warrant, Trooper Kennedy averred that his "multiple database queries" revealed an address of 791 Line Street for defendant Strong and an address of 815 Line Street for defendant Thomas. The search of 815 Line uncovered

8

twenty-five glass containers with "yellow caps of crack cocaine," blue baggies of crack cocaine in various different packages, additional packaging material, and sifters and toothbrushes.

The evidence seized from 815 Line Street, pursuant to a warrant, is not at issue.

C.

The trial court granted defendants' motion to suppress the evidence seized during the warrantless search of 820 Line Street. The court accepted the troopers' testimony as credible. Nevertheless, the court found that the State had not satisfied its burden of proving that 820 Line was an abandoned building that justified bypassing the warrant requirement. In reaching that conclusion, the court made the following findings of fact: the troopers did not attempt to ascertain who owned 820 Line Street; the front door was secured by a lock; the back door was propped shut from the inside; and defendants Brown and Strong used a key to enter and exit the building, "thus evidencing a possessory interest in the house and the property inside." The court noted that "the house was in deplorable condition" and that the electric meter was missing, which suggested that the dwelling may have had no electricity. The court, however, recognized that "there may well be many people who live in the city who, due to poverty, live without electricity or have

9

recently had their electricity shut off." The court considered lack of electricity to be one factor, but not dispositive, "in making an abandonment determination." Moreover, in the court's view, the State did not establish "that the interior of the dwelling reflected abandonment as opposed to horrid living conditions occasioned by any of a set of circumstances apart from abandonment." Accordingly, "[t]aking into consideration all of the evidence . . . , the court [was] not satisfied the State ha[d] proven by a preponderance of the evidence that the house was abandoned."

Consistent with its finding that the house was not abandoned, the court determined that, under New Jersey law, defendants had automatic standing to challenge the search. The court reasoned that defendants had standing because they were charged with possessory offenses resulting from the seizure of evidence from 820 Line and because they exercised "possessory control over the premises," demonstrating "a desire to keep intruders out" by the manner in which the front door was padlocked and the rear door secured.

The court also found that exigent circumstances did not justify a warrantless search of 820 Line. The trial court allowed that a protective sweep of the premises was a constitutionally permissible step for the protection of the police. No incriminating evidence was discovered in plain view

during the sweep.  The court found that the search for evidence afterwards, which was not predicated on exigent circumstances, violated the warrant requirement.  The court concluded that "those living in impoverished squalor are entitled to the same privacy protections under the Constitution as are individuals who reside in gated mansions," and declared the warrantless search invalid.

D.

The Appellate Division granted the State's motion for leave to appeal and, in an unpublished opinion, affirmed the trial court's suppression order.  The panel determined that the trial court's "findings of fact" were "amply supported by the record" and "that the State failed to satisfy its heavy burden of establishing an exception to the constitutional requirement that police obtain a warrant before conducting a search."  The panel recognized that defendants have "no constitutionally protected interest in property that has been abandoned" and therefore would have no basis to challenge a search of an abandoned building.  The question, as posed by the panel, was "whether the property at 820 Line Street was in fact abandoned."

The panel concluded that the State had not proved that the building was abandoned.  The panel noted that on the two days that 820 Line Street was under surveillance, "defendant Strong was observed repeatedly going in and out of the house, thereby

11

negating the conclusion that the house was vacant." The panel reasoned that evidence that defendant Strong lived elsewhere did not mean that he did not have the permission of the owner to use the premises or have a possessory interest in the property.

The panel disagreed with the State that "a check of the property records would have been either an onerous task or inconclusive in its results." From the panel's perspective, a check of the recorded deeds would have revealed "the identity of the owner of the property." From there, "the troopers could have conclusively determined whether the owner had abandoned the property" and whether defendants were trespassers or squatters.

The panel also agreed with the trial court that the deplorable condition of the house and a missing electric meter did not "demonstrate that the property had been abandoned by its owner." The panel pointed out that the troopers never checked to see whether electricity was working on the premises and that proof of the absence of electricity would have been some evidence of abandonment.

Additionally, the panel declined to give weight to the information provided by the "concerned citizen and two credible confidential informants" because the information provided was "conclusory" -- none of the sources gave "a factual basis to support the information imparted." Last, the panel was unwilling to conclude that the surrounding buildings suggested

12

that 820 Line Street was abandoned.  The panel emphasized that, unlike the buildings on either side of it, 820 Line Street was not boarded up and that nearby 815 Line Street was obviously not abandoned because the troopers secured a warrant to search it.

For these reasons, the panel deferred to the trial court's fact-findings and conclusions of law.

We granted the State's motion for leave to appeal.  State v. Brown, 210 N.J. 216 (2012).  We also granted the motion of the Attorney General of New Jersey to appear as amicus curiae.


II.

A.

The State urges this Court to reverse the Appellate Division's affirmance of the suppression of the evidence seized from 820 Line Street.  The State argues that the warrantless search of 820 Line Street was constitutionally permissible because "the experienced officers' conclusion that the property was abandoned was objectively reasonable based on the totality of the circumstances."  It criticizes the trial court's "failure to appreciate the objective nature of the inquiry based on the structure's outward appearance and knowledge of its history." As evidence that 820 Line Street was abandoned, the State points to, among other things, the "broken first-floor windows," the lack of an electric meter, the disarray and trash in the

13

interior, and the multiple persons who had keys to the padlock and who entered for short periods to facilitate drug transactions. In determining whether a structure is abandoned, the State maintains that the test for objective reasonableness should not be limited to an inquiry into property ownership. Thus, it says, "the proper focus of the abandonment query is on the condition of the property itself, rather than the identity and subjective desire of the true owner." According to the State, defendants -- who were "transient users" of the premises -- could not confer on themselves "a legitimate expectation of privacy" by merely "installing a padlock on the exterior of the front door." The State submits that, given the totality of the circumstances, it proved by a preponderance of the evidence that the troopers had an objectively reasonable basis to believe 820 Line Street was abandoned.

B.

The Attorney General, appearing as amicus curiae, asserts that both the trial court and Appellate Division analyzed the issue "under the wrong legal theory." According to the Attorney General, "[t]he focus of this case should not be on the 'abandonment' exception to standing, but rather, on the defendants' failure to establish any lawful interest in 820 Line Street giving rise to a reasonable expectation of privacy." The Attorney General posits that under both the Federal and State

14

Constitutions, defendants had the burden of proving "a reasonable expectation of privacy in the place searched." Under this approach, defendants "did not present any evidence to demonstrate their own reasonable expectation of privacy" and did not "rebut the objectively reasonable conclusion that they were trespassers who hijacked someone else's vacant property."

The Attorney General does not believe that the failure of the troopers to identify the property's legal title holder is dispositive because "[t]he inquiry is not whether the police could have done something different, but whether their actions, when viewed as a whole, were objectively reasonable." The Attorney General urges that we not apply the abandonment doctrine set forth in State v. Johnson, 193 N.J. 528 (2008), because "the issue is not whether these defendants relinquished any interest in the property, but whether they had any right to be there in the first place."

C.

Defendants argue that they had a reasonable expectation of privacy in the property at 820 Line Street under the Federal Constitution and a possessory interest in that property that gave them standing to challenge the search under the New Jersey Constitution. Defendants contend that they exercised control over the property by the use of a lock and key and were the "'apparent' owners of the property through their continual use

15

of the property." They assert that the property at 820 Line Street did not satisfy the test for abandoned property articulated in Johnson, supra, 193 N.J. 528. They further assert that no exception to the warrant requirement, including exigent circumstances, justified the warrantless search. In large part, defendants rely on the reasoning of the trial court in granting and the Appellate Division in affirming the motion to suppress.

III.

A.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution both guarantee "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures."[2] The fundamental privacy interests of the home are at the very core

---

[2] The Fourth Amendment and Article I, Paragraph 7 use virtually identical language. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> [U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7.]

of the protections afforded by our Federal and State Constitutions.  See State v. Evers, 175 N.J. 355, 384 (2003).  "Indeed, 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  State v. Vargas, 213 N.J. 301, 313 (2013) (quoting United States v. U.S. Dist. Court (Keith), 407 U.S. 297, 313, 92 S. Ct. 2125, 2134, 32 L. Ed. 2d 752, 764 (1972)).

Within that constitutional framework, our jurisprudence expresses a clear preference for police officers to secure a warrant before entering and searching a home.  State v. Frankel, 179 N.J. 586, 597–98, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004), overruled in part by State v. Edmonds, 211 N.J. 117 (2012).  For that reason, generally, the probable-cause determination for the search of a home is made "by a judicial officer, not by a policeman or Government enforcement agent."  Johnson v. United States, 333 U.S. 10, 14, 68 S. Ct. 367, 369, 92 L. Ed. 436, 440 (1948).  Because securing a warrant is the default position in our constitutional jurisprudence, warrantless searches are presumptively invalid.  Frankel, supra, 179 N.J. at 598; Kentucky v. King, 563 U.S. __, __, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865, 874 (2011) ("It is a basic principle of Fourth Amendment law . . . that searches and seizures inside a home without a warrant are presumptively unreasonable." (internal quotation marks omitted) (quoting

17

Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650, 657 (2006))). The State bears the burden of proving by a preponderance of evidence that the warrantless search of a home falls within one of the few "'well-delineated exceptions' to the warrant requirement." Frankel, supra, 179 N.J. at 598 (quoting Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290, 298-99 (1978)).

B.

Under both Article I, Paragraph 7 and the Fourth Amendment, a defendant has no standing to challenge the warrantless search of abandoned property. Johnson, supra, 193 N.J. at 548 ("[I]f the State can show that property was abandoned, a defendant will have no right to challenge the search or seizure of that property."); see also Texas v. Brown, 460 U.S. 730, 748, 103 S. Ct. 1535, 1546, 75 L. Ed. 2d 502, 518 (1985) (Stevens, J., concurring in judgment) ("If an item has been abandoned, [no] Fourth Amendment interest is implicated, and neither probable cause nor a warrant is necessary to justify seizure."). To that extent, abandoned property falls within an exception to the warrant requirement.

A significant point to our analysis is that the state and federal approaches to standing are quite different. For standing purposes, Article I, Paragraph 7 provides broader

18

protection to the privacy rights of New Jersey citizens than the Fourth Amendment.  See State v. Alston, 88 N.J. 211, 226 (1981).

In Rakas v. Illinois, 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), and United States v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), the United States Supreme Court articulated a new test for standing under the Fourth Amendment.  Under that test, a defendant cannot assert a Fourth Amendment challenge unless he has a reasonable expectation of privacy in the place searched by government officials.  Salvucci, supra, 448 U.S. at 91-92, 100 S. Ct. at 2553, 65 L. Ed. 2d at 628.  Moreover, under the federal standing test, it is the defendant who bears the burden of showing that he had a legitimate expectation of privacy in the place or area searched.  See Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633, 641 (1980).

In Alston, supra, our Court parted ways with the United States Supreme Court's Fourth Amendment standing jurisprudence, "afford[ing] the citizens of this State greater protection against unreasonable searches and seizures" under Article I, Paragraph 7 of our State Constitution.  88 N.J. at 225, 227.  We "retain[ed] the rule of standing traditionally applied in New Jersey, namely, that a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory

19

interest in either the place searched or the property seized."
Id. at 228. We came to this conclusion because this rule of
standing is "more consonant with our own interpretation of the
plain meaning of Article [I], paragraph 7 of our State
Constitution." Id. at 227. We rejected "the amorphous
'legitimate expectations of privacy in the area searched'
standard as applied in Rakas, Salvucci and Rawlings." Id. at
228. Moreover, unlike federal jurisprudence, under Article I,
Paragraph 7, the State bears the burden of establishing that the
defendant does not have standing to challenge a search. See
Johnson, supra, 193 N.J. at 548-49 n.4. "[O]ur standing rule is
intended to safeguard the privacy rights of our citizens and to
deter the police from conducting unreasonable searches and
seizures, particularly in a home, which is accorded heightened
constitutional protections." Id. at 548.

Because Article I, Paragraph 7 provides greater standing
rights to individuals than the Fourth Amendment, our analysis
will proceed under State Constitutional law while referring to
federal law as persuasive authority.

C.

The essential issue in this case is whether defendants had
standing to object to the search of 820 Line Street. Simply
put, defendants do not have standing to object to the
warrantless search of the property if the building was abandoned

20

or, alternatively, if they were trespassers.  In those circumstances, defendants would not have standing because they would not have the requisite possessory or proprietary interest in the property to object to the search.  However, the State bears the burden of proving by a preponderance of the evidence that the building is abandoned or defendants are trespassers.  See Frankel, supra, 179 N.J. at 598.

We have had occasion to define when personal property is abandoned for standing purposes in Johnson, supra, 193 N.J. 528.  In Johnson, we held that personal property is abandoned for standing purposes "when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property."  Id. at 549.  This standard, however, cannot be easily adapted to abandonment of real property.

Unlike personal property, real property always has an owner of record.  Indeed, it is recognized that "for common law purposes real property cannot be abandoned."  United States v. Harrison, 689 F.3d 301, 307 (3d Cir. 2012), cert. denied, __ U.S. __, 133 S. Ct. 1616, 185 L. Ed. 2d 602 (2013); see also James C. Roberton, Recent Development -- Abandonment of Mineral Rights, 21 Stan. L. Rev. 1227, 1228 (1969) ("[A] firmly established common law rule provides that a corporeal interest

21

in land [e.g. ownership in fee simple] cannot be abandoned."
(citing Ferris v. Coover, 10 Cal. 589 (1858); Cox v. Colossal
Cavern Co., 276 S.W. 540 (Ky. 1925))).

Although principles of property law may inform
constitutional analysis, those principles are not dispositive in
our interpretation of the Fourth Amendment, Harrison, supra, 689
F.3d at 307, or Article I, Paragraph 7, State v. Hempele, 120
N.J. 182, 213 (1990) ("'Abandonment' in the property-law sense
is not dispositive of the reasonableness of a privacy
expectation."). Thus, the proper test for abandonment remains,
for Fourth Amendment purposes, whether a defendant "retains a
reasonable expectation of privacy in the property alleged to be
abandoned," United States v. Stevenson, 396 F.3d 538, 546 (4th
Cir.) (internal quotation marks, alteration and citation
omitted), cert. denied, 544 U.S. 1067, 125 S. Ct. 2534, 161 L.
Ed. 2d 1122 (2005), and, for Article I, Paragraph 7 purposes,
whether a defendant "retain[s] a proprietary, possessory, or
participatory interest" in the property, Johnson, supra, 193
N.J. at 549.

Establishing an abandonment of real property is "a
difficult standard to meet" under the Fourth Amendment,
Harrison, supra, 689 F.3d at 309, and should be difficult under
Article I, Paragraph 7. According to the United States Court of
Appeals for the Third Circuit, "[b]efore the government may

22

cross the threshold of a home without a warrant, there must be clear, unequivocal and unmistakable evidence that the property has been abandoned.  Only then will such a search be permitted." Ibid.; see also Friedman v. United States, 347 F.2d 697, 704 (8th Cir.) ("Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence." (internal quotation marks omitted)), cert. denied, 382 U.S. 946, 86 S. Ct. 407, 15 L. Ed. 2d 354 (1965).

As with other exceptions to the warrant requirement, here too the test must be one of objective reasonableness.  See, e.g., Edmonds, supra, 211 N.J. at 132 (holding that officer must have "objectively reasonable basis to believe" immediate action necessary "to protect or preserve life, or to prevent serious injury" under emergency-aid exception to warrant requirement). The test is whether, given the totality of the circumstances, an objectively reasonable police officer would believe the property is abandoned.  See Harrison, supra, 689 F.3d at 307 (holding that whether real property is abandoned "must be made from an objective viewpoint" by examining the "totality of the facts and circumstances").  The subjective belief of the officer is not a relevant consideration, and thus courts should not delve into the murky area of whether an officer acted in good or bad faith. See, e.g., Whren v. United States, 517 U.S. 806, 812, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89, 97 (1996) ("[We have] never held .

23

. . that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment . . . .").  Suffice it to say, a police officer's sincere, good-faith but <u>unreasonable</u> belief that real property is abandoned will not justify a warrantless search when a defendant has an apparent possessory interest in that property.

Although federal principles of standing differ from our own, the decision of the United States Court of Appeals for the Third Circuit in <u>Harrison</u>, <u>supra</u>, is instructive in determining whether property is abandoned for purposes of upholding a warrantless search.  The Third Circuit commented that, for Fourth Amendment purposes, to justify a warrantless search of a home, evidence of abandonment must be clear and unequivocal and judged objectively in light of the "the totality of the facts and circumstances."  <u>Harrison</u>, <u>supra</u>, 689 <u>F.</u>3d at 307, 309.  Accordingly, if it is "ambiguous to a reasonable officer whether a dilapidated house is abandoned . . . the officer [will] need to make further inquiries into the property's status."  <u>Id.</u> at 311 n.5 (citing <u>United States v. Cos</u>, 498 <u>F.</u>3d 1115, 1128-29 (10th Cir. 2007)).  In short, "[t]here simply is no 'trashy house exception' to the warrant requirement," and therefore "[i]t is unreasonable to assume that a poorly maintained home is an abandoned home."  <u>Id.</u> at 311.

In Harrison, supra, the Third Circuit concluded the officers had a reasonable basis to believe that the house was abandoned. Id. at 312. It came to that conclusion for a number of reasons: the front door was never locked and always open, id. at 306; the police routinely observed squatters who used it as a drug residence, id. at 305, 311; the property was "in a state of severe disrepair," and the house so dilapidated that "the officers believed it was not fit for human habitation," id. at 310-11; and the house smelled of urine, the toilets were never flushed, and drugs and drug paraphernalia littered the premises, id. at 305. Based on the property's history, particularly "its unchanging, uninhabitable condition over several months," the officers had an objectively reasonable basis to conclude the property was abandoned and therefore the warrantless search was permissible under the Fourth Amendment. Id. at 312 (emphasis added).

D.

For the benefit of our courts and law enforcement, we can identify some factors to be considered in determining whether, in light of the totality of the circumstances, a police officer has an objectively reasonable basis to believe a building is abandoned, thus justifying a warrantless entry and search. No one factor is necessarily dispositive, and the weight to be

25

given to any factor will depend on the particular circumstances confronting the officer.

We must begin with the simple reality that a house or building, even if seemingly unoccupied, typically will have an owner.  See Roberton, supra, 21 Stan. L. Rev. at 1228.  In deciding whether a building is abandoned, or a person is a trespasser, one reasonable step an officer might take is to examine readily available records on ownership of the property.  Deeds are kept in the county recording office and provide the address of the property owner.  See 13A New Jersey Practice, Real Estate Law and Practice § 33.2, at 502, § 33.10(4), at 508 (John A. Celentano, Jr.) (2d ed. 2002).  The records of the municipal tax assessor will provide the name and address of the owner of property and can be inspected in municipal offices.  Id. at § 33.15, at 510-11.  Many of these county and municipal records are also online.  See, e.g., Property Tax Search, Camden County, http://www.camdencounty.com/government/property-tax-search (last visited Dec. 4, 2013).  It bears mentioning that one of New Jersey's newspapers provides a free, online database with the names of property owners and the assessed values of their properties.  See New Jersey Property Owners, Assessments and Taxes, 2012, Asbury Park Press, http://php.app.com/mod4_10/search.php (last visited Dec. 4, 2013).

Moreover, utility records, which can be secured by a grand jury subpoena,[3] will reveal not only the name of the property owner, but also whether electricity has been used in the premises. Such record checks are not the exclusive means of determining whether property is abandoned, but just one factor in assessing whether a police officer acted in an objectively reasonable manner.[4]

Other factors to consider in assessing whether a building is abandoned is the property's condition and whether the putative owner or lessee has taken measures to secure the building from intruders. There are impoverished citizens who live in squalor and dilapidated housing, with interiors in disarray and in deplorable condition, and yet these residences are their homes. As succinctly stated, there is not a "'trashy house exception' to the warrant requirement." Harrison, supra, 689 F.3d at 311. Yet, a police officer may be familiar with an unoccupied building with missing doors and broken windows, and an interior in utter shambles and lacking electricity, and reasonably conclude that the structure is abandoned. The decrepit condition of the exterior and interior of a building is

---

[3] Utility records must be obtained by process, such as a grand jury subpoena or a search warrant. See State v. Domicz, 188 N.J. 285, 299 (2006).

[4] We do not suggest that, to show abandonment, the police are required to attempt to contact an owner if doing so would compromise an investigation.

a factor, but other circumstances will necessarily come into play.  For example, the boarding of windows and bolting of doors of a shabby-looking building will suggest an intent to keep people out by a person exercising control over the property and therefore may be evidence that conflicts with abandonment.  After Superstorm Sandy wreaked destruction in New Jersey communities, many houses had to be boarded up because of structural damage, and yet those homes were not abandoned.

Another factor is an officer's personal knowledge of a particular building and the surrounding area.  It is one thing for an officer to conclude a building is abandoned after observing for months the "unchanging, uninhabitable condition" of property that is unfit for human habitation, and which has been overrun by drug squatters, see Harrison, supra, 689 F.3d at 312, and it is another thing for an officer to come to the same conclusion after conducting a limited surveillance over two non-consecutive days that reveals drug dealing but little about whether a squalid habitation is one's home.

A home is not deemed "abandoned" merely because a person is dealing drugs from it.  Of course, police officers are not powerless to enforce the law when crimes are committed in non-abandoned buildings.  Police officers can arrest those who commit drug offenses in their presence.  Search warrants can be secured when probable cause exists that evidence of a drug crime

28

will be found inside a home.  If obtaining a warrant is impracticable, and exigent circumstances demand swift action because of the threatened destruction of drugs inside a residence, then a warrantless entry may be justifiable.  See State v. Lewis, 116 N.J. 477, 484 (1989); see also State v. Pena-Flores, 198 N.J. 6, 23 (2009).

E.

An issue related to abandoned property is the standing status of trespassers.  Just as a defendant will have no standing to challenge a search of abandoned property, he will have no standing to challenge a search if an officer had an objectively reasonable basis to believe he was a trespasser.  That follows because a trespasser, by definition, does not have a possessory or proprietary interest in property where he does not belong -- where he does not have permission or consent to be.  Cf. State v. Bibbo, 83 N.J. Super. 36, 39 (App. Div. 1964) (holding that defendant has no standing to object to search of property if he does not have any proprietary, possessory or participatory interest in that property).  The police do not have to obtain a warrant to enter a house to arrest a burglar.  Similarly, if it is well known that the owner of a boarded-up home is living elsewhere, the police do not have to conduct a records check or secure a warrant when a stranger is observed inside the structure, the front door lock is broken, and the

29

door is wide open.  As with abandoned property, the police must have an objectively reasonable basis to believe a person is a trespasser to conduct a warrantless search of a home.  The burden remains on the State to show an objectively reasonable basis for the warrantless search of a home.

F.

In summary, in determining whether a defendant has a possessory or proprietary interest in a building or residence and therefore standing to object to a warrantless search under Article I, Paragraph 7 of our State Constitution, many of the factors enumerated above will be relevant.  Ultimately, the focus must be whether, in light of the totality of the circumstances, a police officer had an objectively reasonable basis to conclude that a building was abandoned or a defendant was a trespasser before the officer entered or searched the home.

The legitimacy of a search will not depend on what was learned by the police after entry into the home.  Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 415, 9 L. Ed. 2d 441, 453 (1963) (rejecting the proposition "that a search unlawful at its inception may be validated by what it turns up.").  When police officers conduct a search based on an objectively reasonable belief that a building is abandoned, their judgment should not be second-guessed if information

30

gathered later reveals they were mistaken.  See Harrison, supra, 689 F.3d at 309-10.

                              G.

    We must mention two cases, which touch on questions posed in this case but which do not squarely address the standing issues raised here under Article I, Paragraph 7.  Both cases preceded our decision in Johnson, supra, 193 N.J. 528.

    In State v. Perry, 124 N.J. 128, 139 (1991), the defendant failed to keep an appointment with police to take a polygraph test because, according to his co-defendant, Miller, he "would not come to the station until after he had purchased and used drugs."  The police looked for the defendant at several drug-dealing locations, without success, and drove by Miller's address.  Ibid.  Miller's front door was partially open, even though Miller was at the police station.  Ibid.  The police entered through the opened door and observed, at the top of the stairs, the defendant who asked if he could inject drugs before the interview.  Ibid.  The police confiscated drugs and a hypodermic needle from the defendant.  Ibid.

    The issue in Perry was whether the defendant's trial counsel was constitutionally ineffective for failing to object to the seizure of the defendant and the drugs and needle.  Id. at 147.  We found that there was no meritorious suppression issue because the defendant "was in a house, not his own, that

appeared vacant and whose front door was not only unlocked but open." Id. at 149-50. Clearly, the facts and issues in Perry are different from those presented here.

The State also relies on State v. Linton, 356 N.J. Super. 255, 258-59 (App. Div. 2002), which addressed standing only under the Fourth Amendment. There, two police officers stopped a vehicle whose occupants told them that a man was attempting to sell drugs from 215 Monroe Avenue. Id. at 257. On arriving at that property, the police observed the front and back yards filled with refuse; a closed front door with a broken lock; a broken front window; a living room strewn with garbage and damaged furniture; and no lights on in the residence. Ibid. In addition, the police had not seen anyone at the house for a month despite frequently patrolling the area. Ibid. Under these circumstances, the police officers entered the home and searched the living room where they found drugs hidden in a torn couch. Ibid.

The motion judge suppressed the evidence. Id. at 256. The Appellate Division reversed, concluding that there was no Fourth Amendment violation because "a defendant who hides drugs in someone else's vacant property has no constitutionally-reasonable expectation of privacy." Id. at 259. Although that legal proposition is unassailable even under our State Constitution -- a trespasser who hides drugs in someone else's

32

vacant and unsecured property will not have standing to object to a search of the premises -- whether the evidence of abandonment in Linton meets our current Article I, Paragraph 7 jurisprudence is certainly debatable.

IV.

A.

In applying the principles enunciated here to the trial court's findings, we are governed by a deferential standard of review. When the trial court grants or denies a motion to suppress, we must "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotation marks omitted). In this case, the trial court found that Troopers Kennedy and Austin were credible witnesses. The court did not take issue with their testimony, but rather with the conclusions that they reached -- that is, the reasonable inferences that could be drawn from their observations and that would inform an objectively reasonable police officer. We are not permitted to "disturb the trial court's findings merely because '[we] might have reached a different conclusion were [we] the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of one side' in a close case." Id.

33

at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Thus, we held in Elders that the trial judge deciding a suppression motion "was entitled to draw inferences from the evidence and make factual findings based on his 'feel of the case,' and those findings were entitled to deference unless they were 'clearly mistaken' or 'so wide of the mark' that the interests of justice required appellate intervention." Id. at 245 (citing N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293, 279 (2007)). An appellate court cannot substitute its own findings merely because it would have drawn different inferences from the evidence. Ibid.

With this deferential standard in mind, we now must determine whether the trial court's findings are supported by the record.

B.

It can hardly be disputed that Trooper Kennedy, who was conducting surveillance of 820 Line Street, had probable cause to believe that drug dealing was occurring from that residence. Indeed, even after the first day of surveillance, during which Trooper Kennedy witnessed four drug transactions involving 820 Line Street, had he applied for a search warrant he undoubtedly would have procured one. The issue, however, is not whether the troopers had probable cause to believe that 820 Line Street was the site of criminal activities, but whether they had a reason

34

to bypass the warrant requirement. The fundamental import of the warrant requirement is that the probable-cause determination generally must be made by "a neutral and detached magistrate instead of . . . by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson, supra, 333 U.S. at 13-14, 68 S. Ct. at 369, 92 L. Ed. at 440.

The trial court rejected the State's argument that 820 Line Street was abandoned property, thus allowing for a warrantless search of the property. On the second day of the surveillance, for a period of two hours in the early morning hours, Trooper Kennedy witnessed a number of hand-to-hand drug purchases in front of 815 and 820 Line Street, with defendant Brown, defendant Strong, and Tyree Thomas acting as sellers and defendant Carstarphen presumably acting as a look-out.[5] After receiving money from a purchaser, Strong or Brown then unlocked the padlock on the front door of 820 Line Street and retrieved a small item, presumably drugs, and handed it to the buyer. Thomas followed the same pattern, except he entered 815 Line Street, a building the troopers considered to be an actual, occupied residence.

The court found that defendants Brown and Strong, by using a key to enter the building and then lock it as they exited,

---

[5] The motion testimony does not support the Appellate Division's conclusion that defendant Strong was observed entering 820 Line on the first day of the surveillance.

were exercising "a possessory interest in the house and the property inside."  It is important to note that the surveillances on both May 12 and 17, 2010, occurred during daylight hours, and for only two hours on the latter date.  The troopers did not know whether Brown, Strong, or Carstarphen resided there in the evenings, whether they had an ownership interest in the property, or whether they had permission of the owner to use the property.

The State contends that the confidential informants and the concerned citizen, who purportedly described 820 Line Street as abandoned, give credence to the troopers' own conclusions. However, as the Appellate Division observed, only limited weight can be given to the information provided by these unknown individuals because no one testified to the basis of their knowledge or their reliability, with the exception of Trooper Kennedy's conclusory comment that they had previously been considered credible.  See State v. Smith, 155 N.J. 83, 92-93 (describing adoption of totality of circumstances test to determine reliability of informant's tip, including highly relevant factors of informant's veracity and basis of knowledge), cert. denied, 525 U.S. 1033, 119 S. Ct. 576, 142 L. Ed. 2d 480 (1998).

The trial court noted that the troopers made no effort to learn who owned 820 Line Street.  The record does not suggest

36

that such research would have been difficult or unduly cumbersome. The court also considered that both the front and back doors were secured to keep intruders out, the front door padlocked and the back door, though off its hinges, propped shut from the inside. Although the front door could be padlocked from the outside, nothing in the record suggests the door could not be locked from the inside as well.

The court did not ignore the deplorable condition of the house, the broken window or windows, and the missing electric meter. Nor did it overlook Trooper Austin's view from outside 820 Line Street looking in -- a view of a living room in disarray where the floor was littered with trash bags filled with old clothes, soda cans, and maybe upside-down furniture. We only refer to the information that the troopers possessed before they entered 820 Line Street, for it is at that point that we must judge whether the troopers had an objectively reasonable basis to believe the building was abandoned or defendants were trespassers, and a warrantless search authorized.

The trial court understood that there "is no 'trashy house exception' to the warrant requirement." Harrison, supra, 689 F.3d at 311. The court remarked that many poor people in Camden live in squalor and dilapidated housing. The trial court observed that some of the poor in the city may live for periods

37

of time without electricity.  The court accepted that lack of an electric meter might suggest lack of electricity.  However, the court could not find "that the interior of the dwelling reflected abandonment as opposed to horrid living conditions occasioned by any of a set of circumstances apart from abandonment."  Ultimately, after considering the totality of the circumstances, the court determined that the State had not "proven by a preponderance of the evidence that the house was abandoned."  That finding led the court to conclude that defendants had a possessory or proprietary interest in the property, giving them standing to object to the warrantless search of 820 Line Street.

The court, moreover, held that the State did not establish exigent circumstances to conduct a warrantless entry into 820 Line Street.  After the arrest of defendants and Thomas, the building was secured by the State Police.  There is no suggestion in the record that evidence inside the building was in danger of destruction or that obtaining a warrant was impracticable due to some other exigency.[6]  Indeed, it is

---

[6] The trial court determined that the police were constitutionally permitted to unlock and enter the row house to conduct a protective sweep to remove any potential threat of harm to the police.  However, the State never offered the need for a protective sweep as a justification for entry into 820 Line Street.  That is because the troopers believed that they had a right to conduct a warrantless search of the premises for evidence.  In this case, the protective sweep would only have

38

noteworthy that the State Police secured a search warrant for the occupied residence at 815 Line Street, located just across the street from 820 Line.

Unlike the officers in Harrison, who were aware of the unchanged condition of the property for a period of months, 689 F.3d at 312, the troopers here conducted a surveillance of limited duration -- at most hours -- over two non-consecutive days. As noted earlier, evidence of drug dealing from a building is not proof that it is abandoned.

The trial court drew inferences and came to conclusions that are supported by the record. Ultimately, the court determined that the house was not abandoned for standing purposes.

Although the trial court did not explicitly use the words "objectively unreasonable" to describe the troopers' assumption that the home was abandoned, the court's ruling evidences that determination. The question to be answered is not whether the police have a subjective, good-faith belief that a building is abandoned, but whether they have an objectively reasonable basis

---

been permissible if the troopers had a right to be inside 820 Line. They could not enter just for the purpose of conducting a protective sweep, absent exigent circumstances, such as an objectively reasonable belief that evidence was being destroyed. The police may not create the exigency that justifies an evasion of the warrant requirement. State v. Davila, 203 N.J. 97, 103 (2010).

to believe so.  We have no reason to substitute our judgment for the judgment properly and fairly exercised by the trial court.

V.

The Appellate Division upheld the trial court's suppression of evidence seized as a result of the warrantless search of 820 Line Street.  For the reasons expressed, we affirm and remand to the trial court for proceedings consistent with this opinion.

JUSTICE LaVECCHIA and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.  JUSTICE PATTERSON filed a separate, dissenting opinion in which CHIEF JUSTICE RABNER joins.

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

DERRICK BROWN, LEROY
CARSTARPHEN, and KAREEM
STRONG,

    Defendants-Respondents.

    JUSTICE PATTERSON, dissenting.

    The narcotics investigation that led to defendants' indictment focused upon two houses on the same street: a house located at 815 Line Street in Camden, and the house at the center of this appeal, located at 820 Line Street. The house at 815 Line Street was described by police officers as a brick-faced row home, painted red with windows trimmed in white, with a steel front door, a wrought iron hand rail and an air conditioner installed in a front window. Based upon their observations, the officers reasonably concluded that the house served as a residence. They properly obtained a warrant to enter and search the home.

    The officers' starkly different observations at 820 Line Street led them to the opposite conclusion. The house at 820 Line Street was not secured by any device that could be operated

1

by a person located inside the house, but by a padlock installed on the outside of the front door, locked and unlocked by a key that was later found in the possession of defendant Kareem Strong. The screen door on the front of the house was missing its screen. 820 Line Street lacked a functioning rear entrance; the back door was off its hinges and propped up by an object located within the house. At least one of the front windows was broken and missing its glass pane. The electric meter had been removed from the meter box. Through broken windows, police officers observed "trash all over the place" inside the house. The officers concluded that 820 Line Street was unoccupied and abandoned, and instead of adding that house to their application for a warrant, they conducted a warrantless search. That search revealed holes in the walls, human feces on the floor, garbage strewn about the rooms, a sawed-off bolt action rifle hidden beneath a floor register, narcotics and paraphernalia.

Contrary to the suggestion of the majority, the police officers who conducted this investigation did not ride roughshod over the constitutional rights of the residents of a poor neighborhood. Instead, the officers' contrasting observations at the two neighboring homes led them to the conclusion that while 815 Line Street was someone's residence, 820 Line Street was not a home at all, but rather an empty and abandoned house.

2

The officers conducted a careful investigation and arrived at a conclusion that was firmly grounded in their observations.

Reasonableness is the pivotal inquiry under both the Fourth Amendment and our State constitutional provision regarding search and seizure, N.J. Const. Art. I, Par. 7. State v. Novembrino, 105 N.J. 95, 182, 185 (1987) (citing State v. Bruzzese, 94 N.J. 210 (1983), cert. denied, 465 U.S. 1030, 104 S. Ct. 1295, 79 L. Ed. 2d 695 (1984)). Applying that governing standard, I would reverse the determination of the Appellate Division, and uphold the constitutionality of the officers' search of 820 Line Street. Accordingly, I respectfully dissent.

I.

As the majority notes, the factual findings of the trial court are afforded deference on appellate review. Those findings must be upheld "so long as [they] are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007) (internal quotation marks and citation omitted); see also State v. Handy, 206 N.J. 39, 44 (2011); State v. P.S., 202 N.J. 232, 250 (2010). An appellate court "should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the feel of the case, which a reviewing court cannot enjoy." Elders, supra, 192 N.J. at 244 (quoting

3

State v. Florence Johnson, 42 N.J. 146, 161 (1964)) (internal quotation marks omitted).

I respectfully submit that the trial court's factual findings do not support, but rather undermine, the majority's conclusion that the State failed to meet its evidentiary burden in this case.  The trial court found both of the police officers who testified before it, Trooper Kurt Kennedy and Trooper Gregory Austin of the New Jersey State Police, to be "credible and worthy of belief."  It credited the detailed evidence presented by the State, almost in its entirety.  The court noted the genesis of the officers' surveillance was the tip of a citizen informant that drug transactions were taking place in the area and that defendant Strong was seen with a sawed-off shotgun.[1]  It considered the many hand-to-hand transactions witnessed by the officers conducting the surveillance.  The court made specific factual findings regarding the condition of the front and back doors at 820 Line Street, the absence of the electric meter, the broken windows, the presence of trash and human feces on the floor, and the holes in the interior walls. The trial court noted that the officers did not determine the name of the homeowner, and did not seek or obtain a warrant for 820 Line Street.

---

[1] According to the officers' affidavit submitted in support of their application for a search warrant, a confidential informant identified 820 Line Street as an "abandoned residence."

4

As the court specifically noted, it did not reject any of the testimony presented by the admittedly credible police officers. Instead, it disputed only the application of the legal test for abandonment to those facts. The trial court cited State v. Andre Johnson, in which this Court held that "property is abandoned when a person, who has control or dominion over property, knowingly and voluntarily relinquishes any possessory or ownership interest in the property and when there are no other apparent or known owners of the property." 193 N.J. 528, 549 (2008). The trial court did not conclude, however, that defendants were owners, renters, licensees or guests on the property. Instead, citing no law in support of its holding, the court construed defendants' installation of the padlock on the front door of 820 Line Street to be an exercise of a constitutionally significant possessory interest in the property, and characterized the barricading of the unhinged back door as an assertion of a privacy claim.

In my opinion, the majority is mistaken in its deference to that determination. Only the trial court's factual findings -- not its legal conclusions -- warrant deference on appeal; legal rulings are subject to de novo review. Handy, supra, 206 N.J. at 44-45 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)); see also Zabilowicz v. Kelsey, 200 N.J. 507, 512 (2009) ("We review the law de novo and

5

owe no deference to the trial court and Appellate Division.").
When a case involves mixed questions of law and fact, the Court
provides deference to the supported factual findings of the
trial court, but reviews de novo the application of legal
principles to such factual findings. State v. Harris, 181 N.J.
391, 416 (2004), cert. denied, 545 U.S. 1145, 125 S. Ct. 2973,
162 L. Ed. 2d 898. The trial court's determination on the legal
question of abandonment, for purposes of the Fourth Amendment
and N.J. Const. Art. I, Par. 7, is thus entitled to no deference
on appeal.

I respectfully submit that the trial court's application of
the test for abandonment does not withstand de novo review. The
court's findings as to the condition of the house -- a house
that by virtue of its broken windows could be observed in its
interior as well as its exterior before the police entry --
provided ample evidence of abandonment. See State v. Perry, 124
N.J. 128, 149-50 (1991) (defendant, who was "in a house, not his
own, that appeared vacant and whose front door was not only
unlocked but open," had no "constitutionally-reasonable
expectation of privacy"); State v. Linton, 356 N.J. Super. 255,
256-57 (App. Div. 2002) (defendant, who was using unlit, trash-
filled house with broken lock and missing front window that had
"all the indicia of abandonment" had no reasonable expectation
of privacy). That evidence was further supported by the

6

officers' observations during surveillance.  According to the witnesses, who were found to be credible by the trial court, 820 Line Street was used as a mere storage facility for drug transactions, briefly visited by individuals who retrieved items from the house and quickly departed.

In the trial court's view, however, this compelling evidence of abandonment was trumped by nothing more than the placement of a padlock on the outside of the front door, and the use of an unidentified object to prop up the back door.  I cannot agree with the trial court's holding, to which the Appellate Division panel and majority defer, that these measures to secure 820 Line Street conferred upon defendants constitutionally significant property and privacy rights in the house.  I concur with the observation of the Appellate Division panel in Linton that "a defendant who hides drugs in someone else's vacant property has no constitutionally-reasonable expectation of privacy."  Linton, supra, 356 N.J. Super. at 259. I respectfully disagree that defendants' attempts to keep others out of the house are pivotal in the constitutional analysis.

Although its holding is premised upon State constitutional law rather than the Fourth Amendment, the majority cites as instructive authority a federal decision, United States v. Harrison, 689 F.3d 301 (3d Cir. 2012), cert. denied, ___ U.S. ___, 133 S. Ct. 1616, 185 L. Ed. 2d 602 (2013).  I respectfully

7

suggest that Harrison does not support the majority's holding. In Harrison, the defendant testified at his suppression hearing that he was current on his payments of $750 per month rent for the house at issue, in which he stayed one to two nights a week, gaining access by the use of a key to the front door. Id. at 304. Investigating the theft of a dirt bike, and aware of prior drug activity at the house, police officers observed the house in "severe disrepair" -- boarded windows, trash all over the yard and a front door that was "unlocked and ajar." Id. at 304-05. One officer, who had repeatedly entered the house on prior occasions to evict people from it, testified that the house had no working plumbing as demonstrated by the presence of feces in the bathtub and toilet, that there was candlelight visible from outside the house, which indicated there was no electricity, and that there were "[d]rug bags all over the place." Id. at 305. Concluding that the house had been abandoned, officers conducted a warrantless search and discovered "a gun, scales, pills, and an unknown substance" located next to the defendant, who was arrested. Ibid.

I respectfully submit that the Third Circuit's holding in Harrison underscores the State's satisfaction of its burden in this case. The Third Circuit in Harrison evaluated this evidence under an evidentiary standard requiring "clear and unequivocal evidence" of abandonment. Id. at 307. The majority

8

reaffirms that the preponderance of the evidence burden of proof, by an objectively reasonable standard, applies to abandonment cases in New Jersey. Ante at ___ (slip op. at 20-21). The court determined that the police officer's entry into the defendant's home did not violate the defendant's Fourth Amendment rights because although the home was not in fact abandoned, it had reasonably appeared to be abandoned at the time of the search. Id. at 312.

I consider the officers' observations in Harrison to constitute less compelling evidence of abandonment than the evidence accepted as credible by the trial court in this case. The houses under scrutiny in both cases were in poor condition, evidently devoid of working plumbing and electricity. The house at issue here, however, bore a further indication of abandonment: its front door was padlocked on the outside, indicating that a person inside could not secure it, and its back door did not appear to function at all. Moreover, in contrast to the defendant's tenancy interest established in Harrison, the evidence in this case suggests no connection between defendants and the house at 820 Line Street, other than defendant Strong's exercise of day-to-day control over the front door, and an unknown individual's installation of an object to buttress the back door. I respectfully suggest that if the government met the burden of proving that the officers' conduct

9

was reasonable in Harrison, the State more than satisfied its burden to prove that 820 Line Street was an abandoned house in this case.

In short, I respectfully suggest that if defendants' installation of a padlock and bracing of a broken door gives rise to a constitutionally protected interest in the property that outweighs the evidence credited by the trial court, the legal standard for abandonment in search and seizure cases has little meaning. I consider the facts found by the trial court to demonstrate, not disprove, abandonment, and would not defer to the trial court's interpretation of the law.

II.

In my view, the police officers who conducted the investigation in this case clearly met the governing standard of objective reasonableness. They sought no end run around the warrant requirement. Easily establishing probable cause, they obtained a warrant to enter and search the residence at 815 Line Street. The officers distinguished 815 Line Street from its nearby neighbor, 820 Line Street, reasonably deducing from their observations that the former was occupied and the latter abandoned. I consider the evidence presented at the suppression hearing to satisfy the State's burden of demonstrating abandonment, and I would reverse the determination of the Appellate Division. I respectfully dissent.

10

CHIEF JUSTICE RABNER joins in this opinion.

SUPREME COURT OF NEW JERSEY

NO.  A-113   SEPTEMBER TERM 2011

ON APPEAL FROM   Appellate Division, Superior Court

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

          v.

DERRICK BROWN, LEROY
CARSTARPHEN, and KAREEM
STRONG,

     Defendants-Respondents.

DECIDED   January 29, 2014
          Chief Justice Rabner   PRESIDING
OPINION BY   Justice Albin
CONCURRING/DISSENTING OPINION BY
DISSENTING OPINION BY   Justice Patterson

| CHECKLIST | AFFIRM AND REMAND | REVERSE |
|---|---|---|
| CHIEF JUSTICE RABNER | | X |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | | X |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| | 4 | 2 |

1