SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

## State v. Charles Bryant, Jr. (A-2-15) (075958)

**Argued September 12, 2016 -- Decided November 10, 2016**

**Timpone, J., writing for a unanimous Court.**

In this appeal, the Court determines whether the factual circumstances presented in this case supported a police officer's determination to conduct a warrantless protective sweep in the home of defendant Charles Bryant, Jr.

Officers were dispatched to a report of domestic violence when a woman called 911 to report that she had been assaulted and that she was outside in her vehicle.  The woman did not give her name or that of the attacker, but did supply an address.

Possessed with only this information, the first two officers on the scene proceeded directly to the indicated address.  They knocked on the door.  When Bryant answered, the officers told him to take a seat on the couch.  Bryant complied, and the two officers entered his home.  While one officer questioned Bryant, the other conducted a protective sweep of the apartment, searching any place that potentially could harbor a person.

During the course of the protective sweep, the officer spotted what he believed to be marijuana sticking out of a box on a closet shelf.  The item was seized, Bryant was arrested and removed from his apartment, and a search warrant was obtained.  Officers searching pursuant to the warrant found an assault weapon, approximately fifty-five grams of marijuana, and marijuana packaging materials.

Bryant was charged with fourth-degree possession of a controlled dangerous substance, third-degree possession with intent to distribute, second-degree unlawful possession of an assault firearm, and second-degree possession of a firearm.  Bryant was separately charged with second-degree persons not to possess a firearm.

Bryant moved to suppress all of the evidence seized from the apartment as fruit of an illegal search.  The trial court denied this motion, finding that the officers were lawfully present in the apartment and that, because they did not know whether the man who answered the door was the suspect, or whether the suspect was elsewhere in the apartment, the officers had a reasonable and articulable suspicion that the area could be harboring an individual posing danger.  After determining that the protective sweep doctrine obviated the need for a warrant, the trial could found that the marijuana located during the sweep was in plain view.

Bryant appealed from the denial of the motion to suppress, arguing that the search was illegal.  The Appellate Division affirmed on substantially the grounds stated by the trial court.

This Court granted Bryant's petition for certification, limited to the issue of whether the protective sweep of defendant's residence was lawful.  223 N.J. 162 (2015).

**HELD**:  The officers here lacked reasonable and articulable suspicion that another party was present, much less that another party posed a danger to officer safety.  The protective sweep was thus insufficient to establish an exception to the warrant requirement, and any evidence found as a result of that sweep—even if it was found in plain view— must be excluded and suppressed as fruit of the poisonous tree.

1. In light of the State Constitution's protection of the sanctity of the home, New Jersey jurisprudence reflects an unmistakable preference that officers "obtain a warrant issued by a neutral and detached judicial officer before executing a search."  State v. Edmonds, 211 N.J. 117, 129 (2012).  Thus, it is the State's burden to show that any warrantless search falls within an established exception to the warrant requirement.  (pp 8-9)

2. The protective sweep doctrine is a recognized exception to the warrant requirement that may be invoked only when "(1) law enforcement officers are lawfully within the private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable [and] articulable suspicion that the area to be swept harbors an individual posing a danger." State v. Davila, 203 N.J. 95, 125 (2007). A reasonable and articulable suspicion must be "individualized, rather than generalized," and must be evaluated within the totality of the circumstances. Id. at 129. An officer's "subjective hunch" will not satisfy this prong. Id. at 128. (pp 9-11)

3. When the seizure of evidence results from an unconstitutional action, that evidence is excluded from consideration, as is any evidence seized in a search incident to the original unlawful search, under the fruit of the poisonous tree doctrine. (pp 11-12)

4. Here, there is sufficient evidence in the record to support the trial court's factual finding that the officers lacked information when approaching the apartment, including the name or description of the assailant, the number of parties present, or whether there were weapons involved. One officer conducted the sweep without any situation-specific information to justify it; rather, he relied on a subjective hunch that someone else might be present. There is no record of a reasonable suspicion in this case, without which the authority for the protective sweep dissolves. As such, the evidence seized as a result of the warrantless search should have been suppressed. (pp 12-14)

5. In reaching this conclusion, the Court is mindful of the dangers with which officers are faced and of the fact that domestic violence calls are statistically among the most dangerous. The Court notes, further, that the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35, was passed in recognition of the serious problem posed by domestic violence in New Jersey. The Court stresses, however, that even the mandatory arrest provision of the PDVA must be read as subject to both the State and Federal Constitutions' protections against unreasonable searches and seizures. (pp 14-16)

6. The Court notes that the officers could have asked Bryant questions to either determine that no one else was present or to form a reasonable and articulable suspicion that someone else was in the apartment. Because there was no record of reasonable suspicion, the State failed to meet its burden of presenting evidence sufficient to establish an exception to the warrant requirement. (pp 16-17)

The judgment of the Appellate Division is **REVERSED.** The matter is **REMANDED** to the trial court for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

    v.

CHARLES BRYANT, JR.,

    Defendant-Appellant.

Argued September 12, 2016 – Decided November 10, 2016

On appeal from the Superior Court, Appellate Division.

Susan Brody, Deputy Public Defender, argued the cause for appellant Charles Bryant, Jr. (Joseph E. Krakora, Public Defender, attorney; Ms. Brody, on the brief).

Sara M. Quigley, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General of New Jersey, attorney; Ms. Quigley, on the brief).

Alexander R. Shalom, argued the cause for amicus curiae (American Civil Liberties Union of New Jersey, (Mr. Shalom, attorney; Mr. Shalom, Edward Barocas, Rebecca Livengood, Jeanne Locicero, on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

Certain core principles underpin our search and seizure jurisprudence. Individual privacy rights, especially in the

1

home, are among the most protected. As Justice Robert L. Clifford wrote for the Court, "we are not dealing with a mere formality but with an underlying great constitutional principle embraced by free men and expressed in substantially identical language in both our federal and state constitutions." State v. Fariello, 71 N.J. 552, 559 (1976) (citation omitted). In the present case, we must balance those important privacy interests with the practical and safety concerns of law enforcement. Specifically, we focus on the guidelines surrounding law enforcement's use of a warrantless "protective sweep" when investigating allegations of criminal activity.

When a woman called 911 to report that her boyfriend had struck her, officers were dispatched to the address she provided. While two officers stayed with the woman, who was in a car in a nearby parking lot, two other officers knocked on the door of defendant Charles Bryant, Jr.'s home. When defendant answered, an officer instructed him to take a seat on the couch. As defendant followed this instruction, the officers entered. One conducted a protective sweep of the apartment while the other questioned defendant. All of this was done without knowing the name of the woman's alleged attacker or defendant's

name, and without any indication that there were either other people or any weapons present in the apartment.

Under such circumstances, we find that the law enforcement officers did not adhere to the rigorous standards for proceeding without a warrant under the protective sweep doctrine. Accordingly, we hold that the evidence obtained as a result of their impermissible search must be suppressed. We therefore reverse the judgment of the Appellate Division and remand the matter to the trial court for further proceedings consistent with this opinion.

I.

We glean the following facts from the testimony given by witnesses at defendant's suppression hearing. On January 27, 2013, just before 3 a.m., officers from the Plainsboro Police Department were dispatched to respond to a report of domestic violence. A woman, via a 911 call, frantically reported that she had been assaulted and that she was outside in her vehicle; she did not give her name or her attacker's, but did supply an address.

Patrolmen Schroeck and McCall were in the first two cars to arrive at the scene, and they proceeded directly to the apartment. Corporal Newbon and Patrolman Lapham, who were in the third vehicle to arrive, encountered a woman in a car in the parking lot. When Newbon approached her to ask what was going

3

on, he discovered that she was the caller.  He also noted that she was intoxicated, crying, and excited.  He had trouble obtaining information from the woman, who was incoherent and had scratches and marks on her face.  Eventually, the woman told Newbon that she had been attacked by Charlie Bryant, her boyfriend.  She did not indicate the number of people in the apartment or whether there were any weapons inside.  Newbon then left the woman with Lapham and went to the apartment to determine what was happening there.

When Newbon arrived at the apartment, he found that Schroeck and McCall had already entered.  McCall was with defendant, who was seated on the couch, and Schroeck called to Newbon from the back bedroom.  Schroeck testified that he and McCall, who had been told only the address of the apartment, knocked on the door when they arrived.  According to Schroeck, defendant answered after about a minute.  McCall then instructed defendant to sit on the couch, which defendant did, and both officers entered the apartment.  While McCall questioned defendant, Schroeck conducted a protective sweep of the apartment, searching the kitchen, bathroom, bedroom, and bedroom closet -- all locations that potentially could harbor another person.

Schroeck, whose testimony the trial court found forthright, stated that it is his experience to conduct protective sweeps

4

and that he did so for officer safety, because it was not known whether there were any people or weapons in the apartment. Schroeck added that he was particularly interested in ensuring that no one was hiding in the apartment because domestic disturbances are generally very emotional.

While searching the bedroom, Schroeck detected an "overwhelming odor" of marijuana coming from the closet. Peering into the closet, Schroeck saw a Ziploc bag with green vegetation that he believed to be marijuana protruding through a hole in a shoe box on a shelf just above eye-level in the closet. When Newbon heard Schroeck call to him and entered the bedroom, he also detected the odor of marijuana. Newbon ordered the marijuana seized and had defendant arrested and removed from the apartment.

After defendant was removed, officers locked down the apartment while awaiting a search warrant. The warrant was issued, and the subsequent search yielded multiple items of contraband including a Tec-9 9mm assault weapon, approximately fifty-five grams of marijuana, and marijuana packaging materials.

Defendant was indicted on March 6, 2013, and charged with fourth-degree possession of a controlled dangerous substance ("CDS"), N.J.S.A. 2C:35-10(a)(3); third-degree possession with intent to distribute, N.J.S.A. 2C:25-5(a)(1) and (b)(11);

5

second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f); and second-degree possession of a firearm, N.J.S.A. 2C:39-4.1. On the same date, defendant was separately indicted on a charge of second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b).

Defendant moved to suppress all of the evidence seized from the apartment as fruit of an illegal search. After a suppression hearing, the trial court denied defendant's motion. The trial court found that the officers were lawfully present in the apartment because they were looking for the suspect in a domestic violence case where the victim presented physical signs of injury. Moreover, the trial court reasoned that, because the officers did not know if the suspect was the man who answered the door or was somewhere else inside the apartment, Schroeck had a reasonable and articulable suspicion that the area to be swept could be harboring an individual posing danger. With those findings, the trial court held that the protective sweep doctrine obviated the need for a warrant. The trial court also held that the marijuana discovered during the protective sweep was properly seized under the plain view doctrine.

Defendant appealed the denial of the motion to suppress, arguing that the search was illegal. In an unpublished opinion, an Appellate Division panel affirmed the denial of the motion to suppress, on substantially the same grounds.

6

We granted defendant's petition for certification, limited to the issue of whether the protective sweep of defendant's residence was lawful. State v. Bryant, 223 N.J. 162 (2015). We also granted the American Civil Liberties Union of New Jersey ("ACLU") leave to appear as amicus curiae.

## II.

Defendant makes two primary points: first, that entry of the officers into the apartment was unjustified because they did not have defendant's consent to enter; and second, that the protective sweep was pretextual in that the officers lacked a reasonable and articulable suspicion that the area to be swept could be harboring an individual posing danger.

The State's justification for its exception to the warrant requirement essentially relies on two grounds: (1) the police were lawfully present in defendant's apartment because in mid-winter it was unreasonable to have any conversation with defendant outside; and (2) the police had good cause to perform a protective sweep in this matter because of the danger often inherent in domestic violence calls coupled with the officers' incomplete knowledge of any potential danger awaiting them. In combination, the State contends, those factors created a reasonable and articulable suspicion that the apartment might harbor a hidden, dangerous person.

The ACLU, as amicus curiae, disputes the State's rationale. The ACLU asserts the officers were not lawfully present in defendant's apartment, on the grounds that the officers had no consent to enter the apartment and were not facing exigent circumstances. The ACLU adds that mere uncertainty is insufficient to establish a reasonable and articulable suspicion that the apartment was harboring a hidden, dangerous person.

III.

We review the relevant case law relating to search and seizure. The nearly identical language of the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. On numerous occasions, we have considered "New Jersey's unique interests and values" and in doing so, have "construed Article I, Paragraph 7 [of the New Jersey Constitution] to afford our citizens greater protection against unreasonable searches and seizures than accorded under the Federal Constitution." State v. Johnson, 193 N.J. 528, 541 (2008) (citing State v. Eckel, 185 N.J. 523, 537-38 (2006)). Indeed, we "accord the highest degree of protection to privacy interests within the home," Johnson, supra, 193 N.J. at 532, because "[t]he sanctity of one's home is among our most

8

cherished rights," State v. Frankel, 179 N.J. 586, 611, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004).

Toward that end, "[o]ur constitutional jurisprudence expresses a clear preference for government officials to obtain a warrant issued by a neutral and detached judicial officer before executing a search." Edmonds, supra, 211 N.J. at 129 (citing Frankel, supra, 179 N.J. at 597-98). "[A]ll warrantless searches or seizures are 'presumptively unreasonable.'" Johnson, supra, 193 N.J. at 552 (quoting State v. Elders, 192 N.J. 224, 246 (2007)). As a result, "when the police act without a warrant, the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it 'f[ell] within one of the few well-delineated exceptions to the warrant requirement.'" Ibid. (alteration in original) (quoting State v. Pineiro, 181 N.J. 13, 19-20 (2004)).

One such exception is the protective sweep doctrine. State v. Davila, 203 N.J. 97, 125 (2010). The Supreme Court of the United States first recognized this exception in the context of an arrest in Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094, 108 L. Ed. 2d 276, 281 (1990). There, the Court found that protective sweeps are appropriate when necessary for officer safety reasons so long as the sweep is "narrowly

9

confined to a cursory visual inspection of those places in which a person might be hiding." Ibid.

Twenty years later, this Court extended the protective sweep doctrine to non-arrest settings. Davila, supra, 203 N.J. at 125-26. Recognizing the practical concerns and danger that law enforcement officers are faced with, we held in Davila that, when relying on the protective sweep doctrine to obviate the need for a warrant, the State has the burden of proving the following: "(1) law enforcement officers are lawfully within the private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable [and] articulable suspicion that the area to be swept harbors an individual posing a danger." Id. at 125. The test is conjunctive; the failure of either element is fatal to the application of the exception. See ibid.

In the context of the reasonable and articulable suspicion prong, we have held that courts will look at the totality of the circumstances to determine if there is an "individualized, rather than generalized, suspicion." Id. at 129. There is no mathematical formula to determine what amount of suspicion is reasonable. Pineiro, supra, 181 N.J. at 27. Visual or auditory cues are certainly sufficient to establish that another person may be present. Davila, supra, 203 N.J. at 128. In the absence of visual or auditory signs, courts may consider factors such as

10

preexisting police knowledge that a specific individual presents a danger or has a propensity for violence, some sort of surprise while the police are on scene, overly nervous conduct, and inconsistent or dishonest responses. Id. at 129 (citations omitted). Those signs must lead an officer to believe not only that another individual is present, but also that the other individual presents a danger to officer safety. Ibid. Reasonable and articulable suspicion is critical and, therefore, "[a] seizure cannot . . . be justified merely by a police officer's subjective hunch." Id. at 128 (quoting Pineiro, supra, 181 N.J. at 27).

When the seizure of evidence is the result of the State's unconstitutional action, the principal remedy for violation of the constitutional right to be free from unreasonable searches and seizures is exclusion of the evidence seized. State v. Burris, 145 N.J. 509, 520 (1996). The exclusionary rule is not a "remedy," in the classic sense of the term; rather, its purpose is to deter future illegal conduct by the State. State v. Novembrino, 105 N.J. 95, 137-38 (1987) (citing United States v. Calandra, 414 U.S. 338, 347, 94 S. Ct. 613, 619, 38 L. Ed. 2d 561, 571 (1974)). In order to achieve the full deterrent effect of the exclusionary rule, evidence that is seized in a search incident to the original unlawful search is also excluded under

11

the fruit of the poisonous tree doctrine.  State v. Gibson, 218 N.J. 277, 298 (2014).

IV.

In applying these principles to analyze whether the trial court erred in the present case by invoking the protective sweep exception to the search warrant requirement, we "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record."  State v. Brown, 216 N.J. 508, 538 (2014) (quoting Elders, supra, 192 N.J. at 243).  However, we do "not defer . . . to a trial or appellate court's interpretation of the law," which we review de novo.  State v. Vargas, 213 N.J. 301, 327 (2013).

Here, there is sufficient evidence in the record to support the trial court's factual finding that Patrolmen Schroeck and McCall lacked information when approaching the apartment, including the name or description of the assailant, the number of parties involved, or whether there were weapons involved. Although we accept these findings as true, we cannot conclude from these findings that a protective sweep was justified. Rather, we find that Schroeck's suspicion, at most, was a subjective hunch.  See Davila, supra, 203 N.J. at 128.

Schroeck did not testify that any visual or auditory signs existed that led him to believe there was another person in the

12

apartment.  Cf. United States v. Taylor, 248 F.3d 506, 514 (6th Cir.) (holding that shuffling noises heard before officers entered apartment were sufficient to establish reasonable and articulable suspicion), cert. denied, 534 U.S. 981, 122 S. Ct. 414, 151 L. Ed. 2d 315 (2001).  Moreover, there is no evidence that Schroeck knew defendant.  Cf. United States v. Gould, 364 F.3d 578, 591-92 (5th Cir.) (holding that an officer's prior knowledge of the suspect contributed to the totality-of-the-circumstances analysis), cert. denied, 543 U.S. 955, 125 S. Ct. 437, 160 L. Ed. 2d 317 (2004).  Nor is there any evidence that the officers were suddenly surprised once inside the apartment, that defendant appeared overly nervous, or that his behavior suggested the presence of another person.  Cf. United States v. Caraballo, 595 F.3d 1214, 1225 (11th Cir. 2010) (holding that overly nervous conduct, combined with inconsistent or dishonest answers, could lead to reasonable and articulable suspicion).  In fact, Schroeck conducted the sweep without waiting to hear defendant's answer to McCall's questions.  There was therefore no opportunity for Schroeck to determine whether any of defendant's statements were inconsistent or dishonest.

Instead of relying on any situation-specific indication that another person might be present, Schroeck testified that it was "generally [his] experience . . . to conduct a protective sweep to make sure there are no surprises."  Additionally,

13

Schroeck testified that it was usually "possible" that more than two people were involved in domestic disturbances.  Those statements by Schroeck amount to nothing more than a hunch, not a reasonable and articulable suspicion.

We thus conclude that there is no record of a reasonable and articulable suspicion propelling the protective sweep in this case, without which the authority for the protective sweep dissolves.  As such, the evidence seized as a result of the warrantless search should have been suppressed.  We need not reach the question of consent to enter except to say on these facts, silence does not equate to consent to enter.

V.

In reaching this conclusion, we are mindful that the privacy interests discussed must be viewed in light of the daily difficulties facing law enforcement officers.  We recognize that officers are faced with the difficult task of running toward danger, often with little to no information about the danger they face.

This is especially true in the context of domestic violence calls -- some of the most dangerous calls officers will face.  Family violence researchers report that "more police officers die answering family disturbance calls . . . than die answering any other single type of call."  Joel Garner & Elizabeth Clemmer, Nat'l Inst. of Justice, U.S. Dep't of Justice, Danger

14

to Police in Domestic Disturbances -- A New Look, Research in Brief 2-3 (Nov. 1986), http://files.eric.ed.gov/fulltext/ED295090.pdf (citing one report indicating twenty-two percent of all police fatalities occur during response to domestic violence disputes).

Domestic violence is a serious problem in New Jersey.  Our Legislature addressed this problem by passage of the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35.  Recognizing the dangers posed by domestic violence calls, the Legislature has mandated that officers receive training "on the handling, investigation and response procedures concerning reports of domestic violence."  N.J.S.A. 2C:25-20(a).

The PDVA also includes a mandatory arrest provision.  See N.J.S.A. 2C:25-21(a).  However, that provision must always be read and construed with deep respect for, and adherence to, the constitutional underpinnings of our search and seizure protections.  See, e.g., State v. Younger, 305 N.J. Super. 250, 258 (App. Div. 1997) (underscoring that the PDVA is subject both to the Fourth Amendment and "to the New Jersey constitutional guarantee against unreasonable searches and seizures").  And, as we have held in the past, hunches or lack of information are insufficient to satisfy the need for reasonable and articulable suspicion in countermanding the search warrant requirement and defeating the right of New Jersey citizens to be secure in their

15

homes, free of unreasonable searches and seizures.  Davila,
supra, 203 N.J. at 128.

In the present case, the officers might have obtained the
information they needed by asking defendant preliminary
questions, such as: "Were you just in an argument with your
girlfriend?" and "Is there anyone else here in the apartment?"
Had the officers asked those, or similar, questions and waited
for defendant's response, their fears could have been allayed or
a reasonable and articulable suspicion formed.  Patrolman
Schroeck's failure to pose these basic questions, or wait for a
response to the other officer's questions, reduced his actions
to, at best, nothing more than acting on a hunch.

Officers' diligence in asking the correct questions and
assessing the response or the responder's demeanor before
conducting a protective sweep of the home ensures the proper
balance between the rights of citizens to be secure in their
homes and the need for law enforcement to protect themselves in
these dangerous situations.

The officers here lacked reasonable and articulable
suspicion that another party was present, much less that another
party posed a danger to officer safety.  Because there was no
evidence of reasonable and articulable suspicion, the State
failed to meet its burden of presenting evidence sufficient to

16

establish an exception to the warrant requirement.  See Johnson, supra, 193 N.J. at 552.

This failure fatally taints the "plain view" evidence seized from the initial limited protective sweep search of defendant's apartment.  Even if the marijuana was in plain view -- a point on which we need not rule in this case -- it was seen only in the course of an illegal protective sweep.  The sweep's illegality infected both the basis for the follow-up search warrant and the evidence seized under that warrant as "fruits of the poisonous tree."  The snowball effect of the illegal searches and seizures demands that all the evidence seized from initial sweep to final search be excluded and suppressed.

## VI.

The judgment of the Appellate Division, affirming the denial of defendant's motion to suppress, is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.

17