**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0817-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

NAKESSE Q. ARMSTRONG,

     Defendant-Appellant.

_____

Argued October 30, 2018 – Decided December 7, 2018

Before Judges Rothstadt, Gilson, and Natali.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment Nos. 14-04-1156 and 14-02-0183.

Michael T. Denny, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Michael T. Denny, of counsel and on the brief).

Sarah C. Hunt, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Sarah C. Hunt, of counsel and on the brief).

PER CURIAM

Defendant Nakesse Q. Armstrong and two co-defendants were indicted for multiple crimes related to eight armed robberies. Defendant moved to suppress a handgun and clothing seized from his apartment without a warrant. Following the denial of that motion, defendant pled guilty to seven counts of first-degree armed robbery, N.J.S.A. 2C:15-1, and one count of second-degree robbery, N.J.S.A. 2C:15-1(a)(2).

In accordance with his negotiated plea agreement, defendant was sentenced to concurrent prison terms of fifteen years for the first-degree robbery convictions and seven years for the second-degree robbery conviction. The prison terms were also subject to a period of parole ineligibility, followed by parole supervision, both as prescribed by the No Early Release Act, N.J.S.A. 2C:43-7.2. Defendant appeals and contends that the trial court erred in denying his motion to suppress the physical evidence seized from his apartment. We disagree and affirm. The search and seizure were lawful and the motion was properly denied.

I

Defendant's conviction arose out of a spree of armed robberies of eight gas stations that occurred over a six-week period during August and September

A-0817-16T4

2013. Defendant was arrested and his apartment was searched following the eighth robbery.

On September 21, 2013, the Mount Laurel Police Department was contacted and informed that a robbery had occurred at a gas station in the neighboring town of Somerdale. An employee of the gas station reported that two men armed with handguns had robbed the station. The owner of the station had followed the men as they left in a vehicle and was able to report that the suspects were driving a Mercury Grand Marquis. The owner was also able to provide the police with the license plate number. The police ran a check and learned that the vehicle was registered to defendant and that defendant lived at an address in Mount Laurel. The police also obtained a photograph of defendant from the Division of Motor Vehicles and matched that photograph with images they obtained from surveillance video from the gas station. The surveillance video also captured images of the two suspects and showed what each of them was wearing.[1]

Shortly thereafter, the police went to defendant's address and located his car parked outside his apartment. The police then set up surveillance around the

_____

[1] The trial court allowed testimony concerning the surveillance video to show what the police knew at the time of the search and not for the truth of the matter.

apartment. Thereafter, police officers observed a car pull up outside of defendant's apartment. Defendant then exited the apartment and ran towards the car. The police moved in, arrested defendant, and searched him incident to that arrest.

Following defendant's arrest, the police continued their surveillance of the apartment. Approximately forty-five minutes later, two women exited the apartment and the police stopped and questioned them. One of the women was defendant's girlfriend and the mother of his child. The girlfriend informed the police that her two-month-old child was sleeping in the apartment. An officer testified that the girlfriend then asked the police to check on the child.

The police went into the apartment and found the child, who was unharmed. The police also conducted a protective sweep and, during that sweep, they observed a handgun and clothing that appeared to be wet. Throughout the evening of September 21, 2013, it had been raining heavily. The police secured the apartment and applied for and obtained a search warrant. The police then conducted a search of the apartment pursuant to the warrant and seized the handgun and clothing.

Following his indictment, defendant moved to suppress the physical evidence seized from his apartment. The trial court conducted a two-day

evidentiary hearing and heard testimony from two of the responding officers and defendant's girlfriend. One of the officers testified that when the girlfriend and another woman came out of the apartment, the girlfriend informed him that there was a child still sleeping in the apartment and that the girlfriend asked the officers to check the home so she could re-enter it. The officer also testified that the police then entered the apartment to make sure that the child was safe and to search for the second suspected armed robber.

The girlfriend's testimony differed from the police officer's testimony. The girlfriend testified that her friend had received a call telling her that the police were outside the apartment. The two women then opened the front door, saw police lights, and tried to close the door. According to the girlfriend, the police ordered the women out of the apartment and, as the women left the apartment, the police entered the apartment. The girlfriend acknowledged that, in response to questioning, she told the police that her child was in the apartment. She testified, however, that she was not allowed back in to check on the child. Instead, when she asked the police whether the child was all right, they told her that they would look. Thereafter, an officer came back out and told her that the child was fine.

5

Following the completion of the evidentiary hearing, on December 1, 2014, the trial court entered an order denying defendant's motion to suppress. The court also issued a comprehensive thirty-three-page written opinion.

In its opinion, the trial court made detailed findings of fact and conclusions of law. Significantly, the court found the two police officers who testified to be credible and found the girlfriend's testimony to be credible on certain issues, but incredible concerning how the police entered the apartment. In that regard, the trial court found that the girlfriend had informed the police that the child was in the apartment and had asked the police to check on the child's safety.

The court then analyzed the searches and seizures in a series of steps finding (1) probable cause for the arrest of defendant; (2) a lawful search incident to the arrest of defendant; (3) a lawful entry into defendant's apartment under the community-caretaking doctrine; (4) a lawful protective sweep of the apartment; (5) the lawful discovery of the handgun and clothing in plain view; and (6) a valid search warrant.

II

On appeal, defendant challenges the denial of his motion to suppress the seizure of the physical evidence and contends

A-0817-16T4

THE TRIAL COURT ERRED IN FINDING THAT POLICE LAWFULLY ENTERED THE APARTMENT. BECAUSE THE EVIDENCE SEIZED WAS TAINTED BY THE UNLAWFUL ENTRY, ARMSTRONG'S MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

Our review is limited when a motion to suppress is denied following an evidentiary hearing. We defer to the factual and credibility findings made by the trial court, "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by his [or her] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Johnson, 42 N.J. 146, 162 (1964)). The legal conclusions of a trial court are reviewed de novo. Id. at 263 (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The Fourth Amendment states that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

> Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> [U.S. Const. amend. IV; see also N.J. Const. art. I, ¶ 7 (using essentially identical language).]

Warrantless searches are presumed invalid, but the State may overcome that presumption by showing that the search fell into one of the recognized exceptions to the warrant requirement. State v. Hill, 115 N.J. 169, 173-74 (1989).

The search and seizure at issue on this appeal involved several exceptions to the warrant requirement. The trial court found that the police lawfully entered the home under the community-caretaking doctrine. The court then found that the gun and clothing were discovered in plain view during the course of a valid protective sweep.

A. The Community-Caretaking and Emergency-Aid Doctrines

The community-caretaking doctrine, first enunciated by the United Sates Supreme Court in Cady v. Dombrowski, 413 U.S. 433 (1973), is based on the idea that police officers "often are called on to perform dual roles." State v. Diloreto, 180 N.J. 264, 276 (2004). The doctrine applies when the "police are engaged in functions, [which are] totally divorced from the detection,

investigation, or acquisition of evidence relating to the violation of a [criminal] statute." Id. at 275 (alterations in original) (quoting State v. Cassidy, 179 N.J. 150, 161 n.4 (2004)).

The doctrine serves as an exception to the warrant requirement for a search (1) when officers' actions are "unconnected to a criminal investigation" and (2) when their actions are "objectively reasonable under the totality of circumstances." Id. at 278. The question "is not the circumstances that brought the police to the scene . . ., but whether the actual entry into the [home] was for the legitimate purpose of fulfilling a community caretaking responsibility." State v. Bogan, 200 N.J. 61, 77 (2009).

The community-caretaking role "extends to protecting the welfare of children" and reflects "the State's general parens patriae duty to safeguard children from harm." Id. at 75. Because "leaving children unattended may constitute a significant threat to their safety and welfare," police may make a warrantless entry "for the purpose of ascertaining the whereabouts and condition" of an unattended child. Id. at 76 (quoting State v. Garland, 270 N.J. Super. 31, 45-46 (App. Div. 1994) (allowing warrantless entry into a motel to check on the welfare of a child under the emergency-aid doctrine)).

In New Jersey, "[w]ithout the presence of consent or some species of exigent circumstances, the community-caretaking doctrine is not a basis for the warrantless entry into and search of a home." State v. Vargas, 213 N.J. 301, 321 (2013). Nevertheless, "[p]olice officers serving in a community-caretaking role are empowered to make a warrantless entry into a home under the emergency-aid exception to the warrant requirement." Id. at 323. The emergency-aid exception applies in exigent circumstances, allowing an officer to enter a home without a warrant if the officer has "'an objectively reasonable basis to believe that an emergency requires that he [or she] provide immediate assistance to protect or preserve life, or to prevent serious injury' and there is a 'reasonable nexus between the emergency and the area or places to be searched.'" Id. at 323-24 (quoting State v. Edmonds, 211 N.J. 117, 132 (2012)). Accordingly, a warrantless entry into a home to check on a child may be justified under a combination of the community-caretaking doctrine and the emergency-aid exception. See Vargas, 213 N.J. at 323-24.

In this case, the trial court found that the officers were informed by the girlfriend that her two-month-old child was unattended in the home. The court also credited the police officer's testimony that he believed that the second armed suspect might be in the home. Accordingly, the police acted in the

10

A-0817-16T4

community-caretaking function under the emergency-aid exception when they entered the home to check on the safety of the child.

B. The Protective-Sweep and Plain-View Exceptions

In New Jersey, the protective-sweep exception to the warrant requirement applies to both arrests and non-arrest settings. State v. Bryant, 227 N.J. 60, 70 (2016); State v. Davila, 203 N.J. 97, 116-21 (2010). In a non-arrest setting, the State must prove that "(1) law enforcement officers are lawfully within the private premises for a legitimate purpose, which may include consent to enter; and (2) the officers on the scene have a reasonable [and] articulable suspicion that the area to be swept harbors an individual posing a danger." Bryant, 227 N.J. at 70 (alteration in original) (quoting Davila, 203 N.J. at 125).

"[T]he legitimacy of the police presence must be probed." Davila, 203 N.J. at 126. The police may not "create[] the danger to which they [become] exposed by entering the premises, and thereby bootstrap into an entitlement to perform a protective sweep." Ibid. To ensure that the protective-sweep doctrine does not "swallow whole the protections of the warrant requirement," id. at 121, the court must scrutinize the State's justification to determine "whether the request for entry was legitimate or a ruse[.]" Id. at 126.

The plain-view exception allows police to seize contraband in plain view without a warrant if three requirements are met: "(1) the officer must be lawfully in the viewing area when making the observation; (2) 'the discovery of the evidence . . . must be inadvertent,'" State v. Gonzales, 227 N.J. 77, 91 (2016) (citations omitted) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 468, 469 (1971)); and (3) the "police officer must have 'probable cause to associate the property with criminal activity.'" State v. Bruzzese, 94 N.J. 210, 237 (1983) (quoting Texas v. Brown, 460 U.S. 730, 741-42 (1983)).

In Gonzales, the New Jersey Supreme Court eliminated the inadvertence prong of the plain-view test. Gonzales, 227 N.J. at 99. The Court, however, applied that new rule of law prospectively as of the date of the opinion— November 15, 2016. Id. at 101. The search at issue in this case took place on September 21, 2013, and therefore, we analyze the officers' actions under the pre-Gonzales standard.

The trial court here found that the officers were lawfully inside the home under the community-caretaking and emergency-aid exceptions to the warrant requirement. Accordingly, the trial court properly found that prong one of the protective-sweep exception was satisfied. Turning to the second prong, the court found that the officers had a reasonable and articulable suspicion that the

second robbery suspect was in the apartment. Given the totality of the circumstances, that suspicion was reasonable and the police acted appropriately in conducting a sweep to protect their safety.

The trial court also found that the protective sweep was conducted "quickly, with the officers checking only [areas] where an adult suspect could hide." The court then found that the clothes and the gun were inadvertently observed in plain view during the protective sweep. All of those findings are supported by substantial, credible evidence in the record, and we discern no error in the trial court's application of the factual findings to the law.

The State also argues that the entry into the home was made after the girlfriend gave a valid consent to search. Further, the State argues that the search and seizure was valid under the independent-source rule. Given our conclusion that the trial court's findings are supported by substantial, credible evidence, we need not reach those issues.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0817-16T4