NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLFATE DIVISION
DOCKET NO. A-0891-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PETER NYEMA, a/k/a
PETE DINAH, KAREEM
T. JEFFRIES, HNE NYEMA,
AND PETE NYME,

Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

November 5, 2020

APPELLATE DIVISION

Submitted September 22, 2020 – Decided November 5, 2020

Before Judges Fisher, Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 11-08-0833.

Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa Aiello, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Christian E. Fisher, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

Following the denial of his motion to suppress, defendant Peter Nyema pled guilty to first-degree robbery, N.J.S.A. 2C:15-1. He was sentenced to fifteen years in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He appeals, challenging the denial of his motion to suppress physical evidence seized without a warrant.

Police officers seized the evidence following an investigatory stop of an automobile in which defendant was a passenger. The arresting officer testified he stopped the car because he was advised two black men had robbed a store. The officer used a spotlight mounted to his car to illuminate the interiors of passing vehicles as he traveled to the store. In one car, he observed three black men who did not react to the light. The officer stopped the car based on those observations. We hold that these undisputed facts do not establish a reasonable articulable suspicion that the men in the car had robbed the store. Accordingly, we reverse defendant's conviction, vacate his sentence, and remand for further proceedings.

I

The facts were developed at an evidentiary hearing on defendant's motion to suppress. The court heard testimony from three witnesses: Sergeant Mark Horan, the officer who stopped the car; defendant's father, who owned the car;

2

and Detective William Mulryne, who received a report that the car had been stolen.

Horan testified that on May 7, 2011, he was on patrol in a marked police vehicle in Hamilton Township. Just after midnight, he received a dispatch transmission that a 7-Eleven store had been robbed by two black males, one of whom had a gun. A subsequent dispatch indicated the two men fled on foot. Horan was familiar with the 7-Eleven store and responded.

When he was about three quarters of a mile away from the store, he saw a vehicle traveling toward him, away from the store. He pointed his spotlight into the vehicle and observed a male and female. Both reacted in a manner Horan described as alarmed or annoyed. In particular, the driver attempted to shield his eyes. Horan drove on and saw a second car traveling away from the store. When shining his light into that car, he "observed three black males[.]" He stated he "received no response from any of them that [he] could observe[.]" Horan explained that they did not look at him; rather, they looked straight ahead.

Horan thought the men's non-reaction was "odd," and decided to stop the car. Accordingly, he made a U-turn, activated the lights on his police vehicle, and effectuated a stop of the car.

A-0891-18T4

As Horan approached the driver's side of the vehicle, two additional police officers arrived in separate cars. An officer at the scene relayed that the robbery suspects had been reported as "wearing dark or black clothing or jackets." The officers approached the vehicle with their weapons drawn. They observed three men in the car: a driver, a front-seat passenger, and a passenger in the back seat. It was later determined that defendant was the front-seat passenger, co-defendant James Myers was the back-seat passenger, and Tyrone Miller, a/k/a Ajene Drew, was the driver.

While outside the vehicle, Horan observed dark jackets on the floor behind the driver's seat. As Horan was speaking with the driver, he was contacted by dispatch and informed the car had been reported stolen.

The officers ordered the three men out of the car and arrested them. Three officers were on scene when the men were taken into custody. More officers arrived as the incident progressed. Thereafter, Horan searched the interior of the vehicle. In addition to the jackets, police found and seized a black balaclava, a pair of knotted black panty hose, a white do-rag, black cloth gloves, a black knit ski mask, a black fleece front-zip jacket, and a brown "Elite MMA" front-zip hooded sweatshirt. The officers also searched for weapons, looking in the trunk and under the hood of the vehicle. Under the hood, Horan observed a red

4

bandana. After retrieving it, he found a gun wrapped inside. Each occupant of the vehicle was also searched incident to their arrest, and cash was seized from each of them. Defendant was found to have $303 in cash.

Defendant and co-defendants Myers and Miller were indicted for first-degree robbery, N.J.S.A. 2C:15-1; third-degree theft, N.J.S.A. 2C:20-3(a); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree terroristic threats, N.J.S.A. 2C:12-3(a); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-3(d); and third-degree theft by receiving stolen property, N.J.S.A. 2C:20-7(a). Defendant and Myers were also charged with fourth-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(b). Defendant was separately charged with fourth-degree aggravated assault, N.J.S.A. 2C:12-13.

Myers and defendant moved to suppress the physical evidence seized from the car. In addition to Sergeant Horan, the court heard testimony from defendant's father and Detective Mulryne. Defendant's father testified that he owned the car in which defendant and the other co-defendants were traveling. He stated the car had not been stolen on May 7, 2011, the date of the incident,

and that he had not reported the car as stolen in the days prior to the stop. In rebuttal, Detective Mulryne testified that on May 5, 2011, he received a report that the vehicle had been stolen.

The trial court denied in part and granted in part defendant's motion to suppress the physical evidence. The court first found that none of the defendants had a reasonable expectation of privacy in the vehicle because it was stolen. The court then found that the vehicle had been lawfully stopped because Horan had a reasonable articulable suspicion that the men in the vehicle had robbed the 7-Eleven. The court noted "the racial makeup of the occupants of the vehicle, three black males traveling away from the scene was the reasonable and typical suspicion for the officer to ultimately pull this car over." Thereafter, the court found that the clothing seized from the interior of the vehicle was lawfully seized under the plain view doctrine. Accordingly, the court denied that portion of defendant's motion to suppress. The court granted the motion to suppress the gun, concluding the gun had been unlawfully seized because it was taken from under the hood without a warrant.

Following the denial of the motion to suppress, co-defendant Myers pled guilty. Defendant proceeded to trial. After the State presented its evidence, defendant negotiated a plea agreement. He pled guilty to first-degree robbery

6

and the State agreed to dismiss all other charges. As previously noted, defendant was then sentenced to fifteen years in prison subject to NERA.

## II

Defendant appeals his conviction and sentence.[1] He contends that the trial court erred in denying his motion to suppress. He argues that the vehicle was illegally stopped and the search of the interior of the vehicle did not comply with the plain view doctrine. Defendant also challenges his sentence, asserting it was excessive because he was sentenced to three years longer than co-defendant Myers. He articulates his arguments as follows:

> POINT I – THE TRIAL COURT'S ORDER DENYING SUPPRESSION OF THE CLOTHING MUST BE REVERSED.
>
> A.    The Description Of The Suspects As "Two Black Males" Who Fled On Foot Did Not Provide Police With Reasonable And Particularized Suspicion To Justify The Investigatory Stop Of Three Black Males Traveling In A Car[.]
>
> B.    Even If The Car Stop Were Lawful, The Plain View Exception To The Warrant Requirement Did Not Justify The Warrantless Entry Into And Search Of The Car[.]

---

[1] The arrest took place in May 2011, defendant was indicted in August 2011, and the motion to suppress was heard and decided in 2013. Defendant's trial commenced in September 2017, and he pled guilty in October 2017. He was sentenced on September 6, 2018. The briefing on this appeal was completed in April 2020, after the parties were granted several extensions to file their papers.

A-0891-18T4

POINT II – THE MATTER MUST BE REMANDED FOR THE TRIAL COURT TO RECONSIDER ITS DECISION TO IMPOSE ON DEFENDANT A PRISON TERM THAT WAS THREE YEARS LONGER THAN THAT IMPOSED ON THE CODEFENDANT, WHO WAS OLDER, MORE CRIMINALLY MATURE AND UNDISPUTEDLY MORE CULPABLE. ADDITIONALLY, BECAUSE THE SCIENCE ON WHICH MILLER V. ALABAMA [567 U.S. 460 (2012)] WAS BASED APPLIES WITH EQUAL FORCE TO 20-YEAR-OLD OFFENDERS, THE COURT SHOULD CONSIDER THE MILLER YOUTH FACTORS IN DETERMINING HOW MUCH WEIGHT AGGRAVATING FACTORS (3), (6) AND (9) DESERVE AND WHETHER MITIGATING FACTORS (4) AND (13) DESERVE MORE THAN ONLY "PARTIAL WEIGHT."

We hold that the State failed to establish reasonable articulable suspicion for stopping the motor vehicle. Accordingly, the subsequent seizure of the physical evidence was unlawful. We therefore vacate defendant's conviction and sentence and remand for further proceedings.

Appellate review of the denial of a motion to suppress physical evidence following an evidentiary hearing is limited. Factual findings made by the trial court will not be disturbed if they are supported by credible evidence in the record. State v. Hagans, 233 N.J. 30, 37 (2018) (citing State v. Gamble, 218 N.J. 412, 424 (2014)). We review legal determinations, including the

A-0891-18T4

application of the law to undisputed facts, de novo, with no special deference. Id. at 38 (citing Gamble, 218 N.J. at 425).

We first address the trial court's determination that defendant had no reasonable expectation of privacy because he was stopped in a stolen car. Notably, the State does not rely on that holding on this appeal. We reject that basis for the court's determination because there was no evidence that the car was stolen. At the evidentiary hearing, defendant's father testified without rebuttal that the car belonged to him and that his son had not stolen the car on or before the day of the stop. The only disputed issue was whether the father reported the car as stolen, justifying the arrest of defendant and the co-defendants. The State presented Detective Mulryne to testify that the car had been reported as stolen. That testimony, however, did not establish that the car had been stolen; rather, the testimony only addressed that the car had been reported as stolen. Accordingly, there is no evidence in the record supporting the finding that the car was stolen when it was stopped. Consequently, defendant had a reasonable expectation of privacy while traveling in a car that belonged to his father.

The United States Constitution and the New Jersey Constitution protect individuals from "'unreasonable searches and seizures' by government officials."

Ibid. (quoting State v. Watts, 223 N.J. 503, 513 (2015)). A warrantless search is presumptively unreasonable. Ibid. To overcome that presumption, the State must prove by a preponderance of the evidence that the search was based on probable cause and fell "within one of the few well-delineated exceptions to the warrant requirement." Id. at 38-39 (quoting State v. Bryant, 227 N.J. 60, 69-70 (2016)). One exception to the warrant requirement is an investigatory stop. State v. Alessi, 240 N.J. 501, 517-18 (2020).

To lawfully stop a motor vehicle, "a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense." State v. Scriven, 226 N.J. 20, 33-34 (2016) (citing State v. Locurto, 157 N.J. 463, 470 (1999)). Accordingly, an investigatory stop is permissible "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v. Chisum, 236 N.J. 530, 545-46 (2019) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)).

"In determining the lawfulness of an investigatory stop, a reviewing court must 'evaluate the totality of circumstances surrounding the police-citizen encounter, balancing the State's interest in effective law enforcement against the

individual's right to be protected from unwarranted [or] overbearing police intrusions.'" Id. at 546 (quoting State v. Privott, 203 N.J. 16, 25-26 (2010)). "An investigative detention that is premised on less than reasonable and articulable suspicion is an 'unlawful seizure,' and evidence discovered during the course of an unconstitutional detention is subject to the exclusionary rule." Ibid. (quoting State v. Elders, 192 N.J. 224, 247 (2007)). While reasonable articulable suspicion is a lower standard than probable cause, "neither inarticulate hunches nor an arresting officer's subjective good faith can justify infringement of a citizen's constitutionally guaranteed rights." Alessi, 240 N.J. at 518 (first citing State v. Stovall, 170 N.J. 346, 356 (2002); and then quoting State v. Arthur, 149 N.J. 1, 8 (1997)).

Sergeant Horan testified he stopped the vehicle based on three pieces of information: (1) a store had been robbed by two black men; (2) the car was within three quarters of a mile from the store, traveling away from it; and (3) the three black men in the car did not react to the spotlight he pointed into their vehicle. Horan acknowledged that the vehicle was not speeding. Indeed, he did not testify that he stopped the vehicle for any motor vehicle infraction. Consequently, it was undisputed that Horan stopped the car in connection with the robbery of the 7-Eleven.

A-0891-18T4

The question is whether, under the totality of the circumstances, Horan had a reasonable articulable suspicion that the three men in the vehicle had just robbed the 7-Eleven. The men's non-reaction to the light does not add much to a reasonable articulable suspicion. Horan acknowledged that when he pointed his spotlight into defendant's car, he observed the three men for only one or two seconds while he was driving by in the opposite direction. Consequently, Horan really only had two pieces of information: (1) the 7-Eleven had been robbed by two black men who fled on foot; and (2) a vehicle with three black men was driving away from the 7-Eleven sometime after the robbery had been reported.

That information articulates a hunch, but it does not articulate reasonable suspicion that the three men robbed the 7-Eleven. Horan had no physical description of the suspects at the time he made the stop. Indeed, Horan only learned that the suspects had reportedly worn dark clothing after he made the stop. Horan also had no description of a vehicle. In that regard, Horan testified that he had been told that the suspects had fled on foot and he used his general experience to assume that they may have run to a getaway car.

The record also does not establish how much time passed between when the robbery occurred and the car was stopped. On cross-examination, Horan estimated that it took him between one to two minutes to travel to the location

12

where he saw the car with three black men. The State did not, however, submit evidence establishing how much time passed between when the robbery occurred and when the car was stopped. Without information on whether the robbery was reported five minutes or an hour earlier, the State leaves us to speculate on whether Horan had a reasonable basis to assume the perpetrators were still in the area.

Obviously, Horan's hunch was correct because defendant ultimately pled guilty. The hunch, however, was still not reasonable articulable suspicion for stopping a vehicle. To accept that proposition would mean that the police could have stopped all cars with two or more black men within a three-quarters-of-a-mile radius of the 7-Eleven store. That proposition would also mean that if a store was robbed by two white females, the police would have reasonable articulable suspicion to stop all cars containing white females within a three-quarters-of-a mile radius of the store. Knowledge of the race and gender of criminal suspects, without more, is insufficient suspicion to effectuate a seizure. See State v. Shaw, 213 N.J. 398, 421 (2012) ("A random stop based on nothing more than a non-particularized racial description of the person sought is especially subject to abuse.").

A-0891-18T4

In summary, the undisputed suspicions articulated by Horan do not constitute reasonable suspicion to believe that the three men in the vehicle had just robbed the 7-Eleven. Accordingly, all the subsequent searches and seizures were illegal, and all the physical evidence seized should have been suppressed. Given our ruling on the stop, we need not address the plain view and sentencing issues. Instead, defendant's conviction and sentence are vacated, and the matter is remanded for further proceedings.

Reversed and vacated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0891-18T4