**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0955-23

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JAMARI HALL and
OREN BURZYNSKI,

    Defendants-Respondents.

_____

Argued March 19, 2024 – Decided April 16, 2024

Before Judges Mayer and Paganelli.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 23-03-0540 and 23-03-0541.

Frank J. Ducoat, Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens II, Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the briefs).

Margaret Ruth McLane, Assistant Deputy Public Defender, argued the cause for respondent Jamari Hall (Jennifer Nicole Sellitti, Public Defender, attorney; Margaret Ruth McLane, of counsel and on the brief).

Prosper Andrew Bellizia argued the cause for respondent Oren Burzynski.

PER CURIAM

By leave granted, the State appeals from an October 20, 2023 order suppressing the warrantless seizure of physical evidence. For the reasons that follow, we vacate the judge's suppression order and remand for further proceedings consistent with this opinion.

We recite the facts from the August 25, 2023 suppression motion hearing, the September 13, 2023 and October 10, 2023 evidentiary hearings related to the motion to suppress, and the judge's October 20, 2023 written decision.

On December 31, 2022, police officers with the Newark Police Department responded to a call of persons possessing weapons at an apartment on Spruce Street. The caller, Tanisha Williamson, told the police she received a text message from Michael Williams, the father of Williamson's young daughter. The child was spending an overnight with her father. The text message instructed Williamson to pick up the child and bring the police because two men forced their way inside Williams's apartment. Williams texted he and the child were sleeping when two men entered his bedroom, brandishing a gun and a knife.

A-0955-23

Upon arrival, the police entered the apartment and found Williams and his roommate, Marcelles Curtis, as well as four other individuals, including defendants Jamari Hall and Oren Burzynski. Williamson retrieved her daughter from the apartment and the police escorted Williamson, the child, and Williams outside. The other individuals were ushered outside the apartment while the police investigated the situation.

Williams told the officers he had lived in the apartment for two months. According to Williams, defendants and the two other men forced their way into the apartment. Williams said defendants pointed weapons at him and the child and demanded he vacate the residence. Williams identified Hall as the person who brandished the gun and Burzynski as the person who brandished the knife.

Upon identifying Williams and Curtis as the apartment's residents, Captain Baseem Zaghloum of the Newark Police Department asked Williams and Curtis for consent to search the apartment for weapons. Both men consented to the search. While searching the living room, the police found a handgun in a large garbage can and a knife in a garbage bag adjacent to the garbage can. Williams identified the gun and the knife as the same weapons defendants pointed at him.

A-0955-23

The police then arrested and charged defendants with aggravated assault, weapons possession, and related offenses.  After his arrest, and without being questioned by the police, Hall stated several times that he did not live in the apartment.

Prior to trial, Hall filed a motion to suppress the gun and knife recovered from the search of the apartment.  During oral argument on the suppression motion, the parties raised the following legal issues:  whether Hall had standing to file the suppression motion; whether Hall abandoned the weapons;[1] and whether the police had valid consent to search the apartment.

On the standing issue, the judge concluded Hall had "automatic standing" to file the suppression motion.  She accepted Hall's position that "he was invited into the apartment by someone else" who Hall believed had "ties to that apartment."  Because Hall was invited into the apartment, the judge determined Hall "established . . . standing to file [the] motion."

On the validity of Williams's consent to search the apartment, Hall argued Williams's consent was invalid because Williams illegally lived in the apartment as a "squatter."  Since Williams occupied the apartment without the owner's permission, Hall claimed Williams could not consent to search the apartment

---

[1]  The weapons abandonment argument is not an issue on appeal.

A-0955-23

and, therefore, the physical evidence found as a result of that search should be suppressed.

In response, the State argued there was valid consent to search the apartment because the officers reasonably believed Williams had apparent authority to consent.

After hearing legal arguments on the validity of Williams's consent to search the apartment, the judge concluded the issue warranted an evidentiary hearing. In explaining the reason for a hearing, the judge stated "there [were] material facts in dispute with respect to the consent that was given [by Williams] for the officers to go in the apartment for the search."

The State then requested a clarification on the parameters of the evidentiary hearing. The judge explained the hearing would address "whether or not the consent that was given by [Williams], at the time [Williams] gave the consent," made it "reasonable[] for the officers to believe that [Williams] had the right to give them the consent." The judge stated that was the "only issue" that would be the focus of the evidentiary hearing. The judge also identified the factual disputes she believed warranted the evidentiary hearing. According to the judge:

> . . . [T]he State [took] the position, how everything played out, was [Williams] just realized that day, when

all of this was going on, that he didn't belong in the apartment.

Versus how . . . the defense [was] making the argument that, [Williams] knew he didn't belong there, he made clear to the officers that he didn't belong there. And the officers knew that, and still pressed him to get the consent.

The judge held a two-day evidentiary hearing on the suppression motion. At the start of the hearing, the State reconfirmed "the hearing was granted for the limited issue of whether it was reasonable for the officers to believe [Williams] had the ability to consent to the search of the apartment."

The State called Captain Zaghloum to testify and moved to admit his body-worn camera footage of the incident. The judge admitted the footage, and the State played a limited portion of the video during the evidentiary hearing. The portion of the video played by the State was offered to demonstrate the police officers reasonably believed Williams and Curtis had apparent authority to consent to the search.

Williams explained how he came to occupy the apartment. He told the officers he lived in the apartment for two months. When the four men showed up to remove Williams from the apartment, he first suspected the apartment belonged to someone who had not given him permission to live there. Williams told the police someone must have illegally rented the apartment to him even

6

A-0955-23

though he had a handwritten document, purporting to be a lease, allowing him to live there. Williams explained to the police that he received the lease from a woman. Williams also identified for the police which individual brandished the gun and the knife.

Based on his discussion with Williams, Captain Zaghloum believed Williams and Curtis lived in the apartment. As a result, the Captain asked, "you guys live here, occupy this place, you guys give us permission to search for the gun that was used against you?" In response, Williams and Curtis granted permission to search the apartment. Williams and Curtis also signed consent to search forms, which were admitted as evidence during the evidentiary hearing.

According to Captain Zaghloum, defendants told the police they did not live in the apartment. Additionally, Captain Zaghloum confirmed the person defendants claimed owned the apartment was not present at the scene.

At the conclusion of Captain Zaghloum's testimony, defense counsel requested an adjournment of the hearing to subpoena Officer Ramon Cruz, an officer with the Newark Police Department who was at the scene. The judge granted defense counsel's request based on the defense "position that there was information provided at the location that questioned whether or not [Williams]

7

was the appropriate person to give consent" and Officer Cruz, as "one of the first officers to arrive at the scene, . . . may have had different information."

The evidentiary hearing on the suppression motion resumed three weeks later.  The judge advised that since the date of the last hearing, co-defendant Burzynski "joined in the motion to suppress."

Officer Cruz testified in response to defendants' subpoena.  He identified his body-worn camera footage of the incident and the judge admitted this video as evidence.  Officer Cruz's brief testimony was consistent with Captain Zaghloum's testimony.  At the conclusion of the testimony, the judge allowed counsel to present additional arguments in support of their legal positions.

Based on the body-worn camera videos, defense counsel argued Williamson told the officers "that someone . . . rented the apartment to [Williams] wrongfully."  Further, defense counsel highlighted the portion of the video where Williams told the officers "somebody wrongfully rented [him] th[e] apartment."  Defense counsel also argued Williams's statements on the video were not credible because he gave conflicting information to the police about the attire worn by the person who pointed the gun and differing descriptions of the gun.  Because Williams's statements to the police lacked credibility, defense counsel asserted the police should have sought a search warrant.

A-0955-23

Additionally, since Williams told the police he was in the apartment "wrongfully," defense counsel asserted the officers should have questioned whether Williams could validly consent to a search. Defense counsel also challenged the validity of Williams's consent to search because the police never advised Williams that he had a right to refuse to consent to the search.

Although not identified as a legal issue to be addressed during the evidentiary hearing, defense counsel noted an officer participating in the search commented he "[did]n't even know whose stuff he was looking through." Relying on the video evidence, defense counsel argued one of the four intruders told Officer Cruz the apartment belonged to the lawful renter's brother and Williams and Curtis had to leave. According to defense counsel, at the request of the person who owned the apartment, Hall had the right to be in the apartment and the "stuff" in the apartment belonged to Hall.

There was no testimony establishing Hall lacked permission to enter the apartment at the owner's request. Nor was there any evidence contradicting defense counsel's legal argument that the "stuff" in the apartment belonged to Hall.

The State contended Williams lived in the apartment, possessed the apartment, and "had a sufficient relationship to the apartment to be able to

A-0955-23

consent." Based on the videos, the State argued the men who entered the apartment admitted they did not live the apartment. While the four men mentioned a fifth person who rented the apartment, the State noted that person was not present at the scene. Additionally, the State asserted the officers could not "get on the phone with somebody who claim[ed] to be the renter" and take the word of an unknown individual over Williams because it was Williams who reported armed intruders in the apartment.

Regarding defendant's argument the officers failed to advise Williams he had the right to refuse to consent to the search, the State explained Williams texted the child's mother, directed her to call the police, and told her to tell the police there were armed men in the apartment. The State argued Williams thus invited the police to enter the apartment and his invitation indicated an understanding he had the right to refuse to consent.

The State also asserted the police asked Williams twice, by way of a "yes" or "no" question, whether he consented to a search of the apartment. Both times, Williams responded "yes." Under the circumstances, the State argued it was "completely reasonable to ask [Williams] for the consent to the search, which [was] why [the police did not] need a search warrant." Further, because defendants conceded Williams lived in the apartment, the State argued the police

had more than sufficient reason to believe Williams had authority to consent to the search.

The judge issued an October 20, 2023 written decision on defendants' suppression motion. The judge found the testimony provided by the officers "believable," "credible," and "truthful," and "[t]heir recollection . . . candid, reasonable, and . . . not evasive in any way."

Based on the testimony and body-worn camera footage, the judge concluded Williams and Curtis had the authority to consent to the search of the apartment. The judge explained the officers reasonably believed Williams and Curtis had apparent authority to consent. As the judge wrote:

> Even if there was a question as to whether [Williams and Curtis] were subleasing the apartment legally, it was reasonable for the police officers to believe that both victims lived in the apartment and had the authority to provide consent to search the apartment. There [was] no dispute that defendants were not living there prior to the date of the incident. In fact, . . . Hall stated several times in the presence of the police officers that he did not live there.
>
>      . . . .
>
> The court recognized that there may have been issues regarding the rental of the apartment. However, there is no dispute that the two victims were living in the apartment prior to [the date of the incident] for a period [of] one month[]-two months. The court need not address whether the victims had a valid lease to rent the

A-0955-23

apartment as the applicable standard here is whether the police officers' belief that the victims had apparent authority to consent was reasonable, even if incorrect.

Based on her review of the evidence and testimony, the judge found "the police officers' belief that Williams and his roommate had apparent authority to consent to search the apartment was reasonable." The judge further found "their consent was given freely and voluntarily."

The judge rejected defendants' argument the consent to search the apartment was invalid because Williams and Curtis were never told they had the right to refuse to consent. Relying on testimony from the evidentiary hearing, the judge found "the victims' consent to search was valid as they were implicitly informed of their right to refuse." The judge concluded Williams and Curtis were aware they had a choice regarding the consent to search based on the "yes" or "no" questions presented by the police officers. Moreover, the judge noted Williams and Curtis signed forms consenting to the search even though the forms were signed after the search concluded.

After rendering these findings, the judge sua sponte determined "the knife and gun must be suppressed as the location where these items were located went beyond the authority either roommate had to provide consent." The judge found

A-0955-23

"[n]one of the police officers confirmed with either victim[] if the items in the living room[] belonged to either one of them."  The judge explained:

> [t]he police officers did not ask either of the victims prior to searching if the concealed items in the living room belonged to either of them.  It would not have been reasonable to presume that all the concealed items in the living room[,] including the garbage bag and garbage can where the weapons were located[,] belonged to the victims.

Because the judge concluded the officers "knew there was an issue about who lived in the apartment," "viewing the living room as is with no couch, coffee table, television, chairs, no furniture at all," the judge found the officers "should have established that [the garbage can and garbage bag] belonged to one of the victims that gave consent, and they did not."  The judge found "the police officers were obligated to ascertain additional information regarding ownership of the concealed items in the living room prior to opening [the] bag[] and garbage can[]."  Although the judge acknowledged the State "satisfied its burden with respect to the consent given by the victims to search the apartment," the judge determined "that consent did not extend to the personal concealed effects located in the living room that was searched."  However, defense counsel and the State never indicated this was an issue to be resolved by the judge as part of the suppression motion.

A-0955-23

On appeal, the State argues the judge erred in granting defendants' suppression motion. It also contends defendants were trespassers and therefore lacked standing to challenge the search. Additionally, the State argues Williams gave valid consent to search the items in the living room.

Our standard of review on a motion to suppress is deferential. State v. Goldsmith, 251 N.J. 384, 398 (2022). We "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We will intervene only if the trial court's findings are "so clearly mistaken that the interests of justice demand intervention and correction." State v. Gamble, 218 N.J. 412, 425 (2014) (internal quotation marks omitted) (quoting Elders, 192 N.J. at 244). We review de novo a trial court's legal conclusions and the trial court's view of "the consequences that flow from established facts." State v. Hubbard, 222 N.J. 249, 263 (2015).

The State argues the judge mistakenly granted the suppression motion on an issue not raised by the parties. The State asserts it was deprived of an opportunity to present evidence and legal arguments on the scope of the search which formed the basis for the judge's ruling in favor of defendants. We agree.

A-0955-23

The State had the right to presume the sole issue to be determined at the evidentiary hearing on defendants' suppression motion, as stated by the judge, was whether it was reasonable for the police officers to believe Williams and Curtis had apparent authority to consent to the search of the apartment. In her written decision, the judge resolved that issue, finding the officers reasonably believed Williams and Curtis had apparent authority to consent. Defendants did not argue the victims' consent excluded the personal property, specifically the garbage can and garbage bag, in the apartment.

"Parties must make known their positions at the suppression hearing so that the trial court can rule on the issues before it." State v. Witt, 223 N.J. 409, 419 (2015). As our Supreme Court held in Witt, it "would be unfair, and contrary to our established rules, to decide [an issue] when the State was deprived of the opportunity to establish a record that might have resolved the issue." Ibid. In Witt, the Court noted the mere filing of a suppression motion did not require the State to justify every aspect of the warrantless search. Id. at 418. As the Court stated, "[r]equiring the State to disprove shadow issues [would] needlessly lengthen suppression hearings and result in an enormous waste of judicial resources." Ibid. "A prosecutor should not have to possess telepathic powers to understand what is at issue in a suppression hearing." Ibid.

A-0955-23

Here, prior to the start of the evidentiary hearing, the State confirmed the scope of the hearing. At no time during the hearing did the judge inform the State of any concern related to the scope of the apartment search or whether the garbage can and garbage bag belonged to Williams or Curtis. If the judge had done so, the State could have presented evidence and witnesses on the scope of the search and created a factual record regarding that issue. By failing to identify the scope of the search as an issue, the judge deprived the State of "the benefit of a robust record within which the claim could be considered." State v. Robinson, 200 N.J. 1, 21 (2009).

Having reviewed the record, we are satisfied the State was denied the opportunity to develop a record regarding the scope of the search. Thus, we remand to the trial court to conduct an evidentiary hearing, allowing the State and defendants to present evidence on the scope of the search and whether Williams and Curtis had authority to consent to a search of the garbage bag and garbage can. We express no opinion on the outcome of the suppression motion after the hearing.

We next consider the State's argument that the judge erred in finding defendants had automatic standing to file a suppression motion. The State

contends defendants were trespassers and, therefore, lacked standing to suppress the evidence. We reject this argument.

"[T]he New Jersey Constitution's prohibition against unreasonable searches and seizures affords New Jersey citizens greater protection than that provided by the United States Constitution," including in matters of standing. State v. Randolph, 228 N.J. 566, 582 (2017). To demonstrate a defendant lacks standing to challenge an allegedly unconstitutional search, "the State bears the burden of showing [the] defendant has no proprietary, possessory, or participatory interest in either the place searched or the property seized." Ibid.

"[A] trespasser, by definition, does not have a possessory or proprietary interest in property where . . . he does not have permission or consent to be." Id. at 586 (quoting State v. Brown, 216 N.J. 508, 535 (2014)). A defendant "will not have standing to challenge a search of . . . property on which he was trespassing." Id. at 585. However, the State must establish a defendant was a trespasser "to strip a defendant of automatic standing to challenge a search." Ibid.

A-0955-23

In her August 25, 2023 oral decision, based on the transcript of the recorded discussion between Hall and the police officers,[2] the judge found Hall was invited to enter the apartment, purportedly by the apartment owner or the owner's relative, in order to remove people who did not belong in the apartment. The State bore the burden of presenting evidence that Hall lacked permission to be in the apartment but failed to do so.

Moreover, the judge distinguished the facts in this matter from the facts before the court in State v. Arias, 283 N.J. Super. 269 (Law Div. 1992). Here, the judge found Hall told the officers someone Hall believed had ties to the apartment invited him to enter the apartment. Based on those facts, unlike the facts in Arias, the judge concluded Hall had automatic standing to challenge the apartment search. The State failed to present any evidence to support its contention that Hall was a trespasser.

We defer to the judge's factual findings as supported by credible evidence in the record. The judge found defendants had automatic standing to file a suppression motion based on the audio transcript from the police officers' body-worn camera footage. In the recording, Hall explained he was invited by

---

[2] The judge did not have the body-worn camera footage from the police officers at the first hearing on Hall's motion to suppress.

someone associated with the owner of the apartment to enter the apartment and evict Williams and Curtis. On these facts, we discern no reason to disturb the judge's determination regarding defendants' standing to file a suppression motion.

Affirmed as to defendants' standing to file a suppression motion. Vacated and remanded for proceedings consistent with this opinion as to the scope of the consent to search the apartment. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0955-23